1  Gregory L. Lippetz (State Bar No. 154228)
   glippetz@jonesday.com
2  JONES DAY
   1755 Embarcadero Road
3  Palo Alto, CA  94303
   Telephone:     650-739-3939
4  Facsimile:     650-739-3900

5  Attorneys for Defendant
   MAXIM INTEGRATED PRODUCTS, INC.
6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  Gregory Bender,                    Case No. C 09-01152 SI

13            Plaintiff,               **MAXIM'S NOTICE OF MOTION
                                       AND MOTION TO:**
14     v.
                                       **1)  COMPEL INFRINGEMENT
15  Maxim Integrated Products, Inc.,          CONTENTIONS THAT COMPLY
                                             WITH PATENT L.R. 3-1, AND**
16            Defendant.
                                       **2)  RELIEVE MAXIM OF CERTAIN
17                                           DISCOVERY OBLIGATIONS
                                             PENDING SERVICE OF
18                                           COMPLIANT INFRINGEMENT
                                             CONTENTIONS**
19
                                       **DISCOVERY MATTER**
20
                                           Date:   November 20, 2009
21                                         Time:   9:00 a.m.
                                           Courtroom 10, 19th Floor
22                                         Judge: Susan Illston

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

NOTICE OF MOTION ......................................................................................................... 1

RELIEF REQUESTED .......................................................................................................... 1

ISSUES PRESENTED ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 2

    I.     INTRODUCTION ................................................................................................. 2

    II.    RELEVANT FACTS ........................................................................................... 4

    III.   ARGUMENT ......................................................................................................... 9

       A.   Bender's Infringement Contentions Violate Patent L.R. 3-1 ......................................... 10

       B.   Bender Should be Compelled to Comply with Patent L.R. 3-1 .................................... 13

       C.   The Court Should Relieve Maxim of its Discovery Obligations Until Bender Supplies His Amended ICs ................................................................................................. 18

    IV.   CONCLUSION .................................................................................................... 20

### **CASES**

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558

(E.D. Tex. 2005) ................................................................................. 14, 16, 17, 19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 9

*ConnecTel, LLC  v. Cisco Sys. Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................. 17

*Intertrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 U.S. Dist. LEXIS 22736

(N.D. Cal. Nov. 26, 2003)........................................................................ passim

*Micromesh Tech. Corp. v. Am. Recreation Prods. Inc.*, No. C-06-6030 MHP, 2007 U.S. Dist.

LEXIS 64241 (N.D. Cal. Aug. 29, 2007) ....................................................... 9, 10, 16

*Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 U.S. Dist. LEXIS

26098 (N.D. Cal. Aug. 13, 2002)................................................................. passim

*Renesas Tech. Corp. v. Nanya Tech. Corp.*, Case No. C 03-05709 JF (HRL), 2004 U.S. Dist.

LEXIS 23601 (N.D. Cal. Nov. 10, 2004). ......................................................... 10, 13

*Townshend Intellectual Prop. L.L.C., v. Broadcom Corp.*, No. 06-05118 JR (RS), 2007 U.S. Dist.

LEXIS 51792 (N.D. Cal. July 5, 2007)................................................................. 19

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000) .......................... 9, 17

### **RULES**

Patent L.R. 3-1(b)................................................................................... 12, 18

Patent L.R. 3-1(c)................................................................................ 2, 10, 11, 18

Patent L.R. 3-1(e)........................................................................................ 11

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 20, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 10, 19th floor, Defendant Maxim Integrated Products, Inc. ("Maxim"), pursuant to Civil L.R. 1-4, Fed. R. Civ. P. 37(a), and Patent L.R. 1-2 and 3-1, will move the Court for an order compelling Plaintiff Gregory Bender ("Bender") to serve infringement contentions that comply with Patent L.R. 3-1, and relieving Maxim of certain discovery obligations until 45 days after service of compliant infringement contentions.

This motion is based on the Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein, and on the declarations submitted in support of the Motion to Compel filed herewith.

**RELIEF REQUESTED**

Maxim seeks an order compelling Bender to amend his infringement contentions as follows:

1.      To provide more specific claim charts, including the results of reverse engineering for, at a minimum, each of the nine "representative" accused product groups.

2.      To provide a complete listing of accused products, and an explanation of how each product fits into one of the nine "representative" accused product groups.

Maxim also seeks an order relieving Maxim from any obligations to produce information relating to the functionality of the accused products or its invalidity contentions under the Patent Local Rules and the Federal Rules of Civil Procedure until 45 days after Bender complies with the Court's order.

**ISSUES PRESENTED**

There are three primary issues to be decided prior to granting Maxim's motion.

1.      Whether Bender's infringement contentions are insufficient under Patent. L.R. 3-1.

2.      Whether Bender must serve revised infringement contentions based on reverse engineering of the accused products, or its equivalent, in order to comply with Patent L.R. 3-1.

3.     Whether Maxim should be relieved of its obligations to produce information relating to the functionality of the accused products and to the invalidity of the patent at issue in this action, pending Bender's service of revised infringement contentions.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Maxim brings this motion to compel Bender to provide infringement contentions that contain the level of specificity required by Patent L.R. 3-1.  It cannot be reasonably disputed that Bender's Patent L.R. 3-1 infringement contentions fail to identify where each element of each asserted patent claim is found in the accused products.  Patent L.R. 3-1 requires the plaintiff to "identify[] specifically where each limitation of each asserted claim is found within each Accused [product]."  Patent L.R. 3-1(c).  For each element of each asserted claim, Bender's infringement contentions against Maxim only state that "This element is located on the integrated circuit contained in the product."  Declaration of James E. Glore ("Glore Decl."), Ex. C.  There can be no question but that such contentions fall woefully short of the level of specificity required by the Patent Local Rules.  Without more, generally accusing amplifiers could implicate numerous prior art amplifiers, including those found invalid in Bender's own cancelled claims.

Bender's refusal to serve compliant infringement contentions is a direct result of his failure to perform a reasonable investigation into the accused products' functionality.  Bender states that, because the circuits that comprise the patented invention are located within a semiconductor, the information necessary for him to more specifically identify where the elements exist (or even if they exist) is not publicly available.  Bender's position ignores the fact that Bender could have, and should have, conducted reverse engineering of any semiconductor chip he planned to accuse *before* he filed his complaint.  Cases interpreting the Patent Local Rules state that reverse engineering or its equivalent is required by patent plaintiffs.  One Northern District Judge presiding over one of Bender's 23 other lawsuits has already informed Bender that he "should have hired legions of people to go out and reverse engineer [the accused products]."  Glore Decl., Ex. G at 15, Transcript of Case Management Conference held before Judge Alsup on July 16, 2009 in Northern District of California, Civil Case Number  3:09-cv-01140-WHA,

*Bender v. Exar, Corp.*  The cost of performing the required investigation is a small fraction of the hundreds of millions of dollars Bender expects to receive from the 37 defendants he has sued. Therefore, Bender should be compelled to amend his infringement contentions to include the results of reverse engineering or its equivalent for each and every accused product.

Bender's infringement contentions also fail to identify all of the Maxim products he intends to accuse in this case.  Patent L.R. 3-1 requires that "[e]ach product, device, and apparatus shall be identified by name or model number."  Bender has provided claim charts for nine representative product groups, and then stated that "[t]he products indicated below are a representative sample of such products."  Glore Decl., Ex. C at 1.  Bender must provide all model numbers of the products he intends to accuse, grouped to correlate to one of the nine claim charts he has produced.

Maxim should not be required to provide technical specifications for the accused products or its invalidity contentions until Bender complies with his Patent L.R. 3-1 obligations.  The Patent Local Rules specifically delineate when a patent defendant must produce technical information and invalidity contentions: 45 days after plaintiff complies with Patent L.R. 3-1.  Bender's failure to comply with his Patent L.R. 3-1 obligations jeopardizes Maxim's ability to fairly determine the scope of relevant discovery for this matter, to defend against Bender's unspecified infringement theories, to properly provide invalidity contentions and to properly participate in the claim construction process as contemplated by the Patent Local Rules.  As a result, Maxim should be relieved of certain discovery obligations unless and until Bender complies with his Patent L.R. 3-1 obligations.

For these reasons, Maxim now moves for an order: 1) compelling Bender to amend his infringement contentions to provide more specific claim charts that include the results of reverse engineering for at least each of the nine "representative" Maxim product groups; 2) compelling Bender to provide a complete listing of all accused products, including an explanation of how each product fits into one of the nine "representative" product groups; and 3) relieving Maxim from any obligation to produce technical information or invalidity contentions until 45 days after Bender's service of amended infringement contentions.

**II.  RELEVANT FACTS**

Just months before his patent expired, Bender filed the current infringement suit against

Maxim, one of 23 such suits filed against 37 defendants over a three month period.  Bender

alleges infringement by Maxim and the other defendants of United States Patent Number

5,103,188 (the "'188 Patent") entitled "Buffered Transconductance Amplifier" issued to Bender.

The '188 Patent recently went through a re-examination by the United States Patent Office which

cancelled over half of Bender's original amplifier claims, including the claims that had the

broadest scope.  *See e.g.,* Glore Decl., Ex. A, U.S. Patent No. 5,103,188, at Col. 15, claim 1.  The

only claims left are directed to specific circuit structures for forming a high speed, high gain

amplifier.  *See* Glore Decl., Ex. A, Col. 16, claim 8.  Figure 4D of the patent is a visual

representation of the asserted claims.[1]  Bender alleges that amplifiers included as part of Maxim's

products infringe the '188 Patent.  *See* Glore Decl., Ex. B, Bender's Infringement Contentions;

and Glore Decl., Ex. C, claim charts provided with Bender's Infringement Contentions.

The '188 Patent is a "circuit" Patent, insomuch as it requires specific electronic

components to be wired together into an electrical circuit.  The amplifier circuit claimed in the

patent is a specific type of circuit that purportedly increases the strength of an electrical signal.

Circuits generally are comprised of a number of specific electrical components such as

transistors, capacitors, and resistors.  More complicated circuits such as the amplifier circuit

claimed in the patent are made up of more complex components, such as current mirrors and

buffers, which are themselves functional units composed of electrical components such as

transistors, capacitors, and resistors.  Semiconductor chips are typically designed and organized

via such functional units.  Rather than depict each transistor and resistor in a diagram, it is

common to use these functional units to depict major circuits within the device.  For amplifiers

and other similar devices, the symbol used to depict the functional unit is typically a triangle lying

on its side.  Drawings using these types of representative symbols are commonly referred to as

functional block diagrams.  Complex chip designs may contain numerous amplifiers as some of

---

[1] Figure 4D of the '188 Patent most closely represents the multiple "input stages" required
in asserted claim 8.

the hundreds or thousands of circuits that make up the chip. *See generally,* Declaration of Matthew Garong ("Garong Decl.").

On September 29, 2009, Bender served his Patent L.R. 3-1 infringement contentions on Maxim. *See* Glore Decl., Exs. B and C. For each product group identified, Bender also served identical "claim charts" that repeatedly recite a similar statement for each of the nine product groups. In each chart, Bender merely states that, for each element in the asserted claims, the element can be found in the integrated circuitry of the product. *See generally,* Glore Decl., Ex. C. As an example of the level of detail present in the charts, the entirety of one of Bender's claim charts is provided below:

| Claim Language | |
|---|---|
| Claim 35 | |
| 35. An electrical circuit for amplifying the difference between complex, high speed signals having differential outputs and constructed with solid state devices, comprising: | This amplifier is more commonly known as a differential or a "voltage feedback amplifier." More generally, it is called an "Op Amp." |
| a first and second input buffer, each having a single non-inverting high impedance input, an open loop voltage gain not exceeding unity, and a low impedance output; | This element is located on the integrated circuit contained in the product. |
| a first current rail traversing through said first input buffer, a second current rail traversing through said second input buffer, each current rail for supplying currents to said respective first and second buffers' low impedance outputs; | This element is located on the integrated circuit contained in the product. |
| a load resistor means is connected between the outputs of said first and second input buffers, the combination of said first input buffer, said second input buffer, and said load resistor forming a differential buffer block; | This element is located on the integrated circuit contained in the product. |
| a first and second pair of opposing current mirrors each with combined outputs and whose inputs are | This element is located on the integrated circuit contained in the product. |

| | |
|---|---|
| connected to said first current rail of said first input buffer and to said second current rail of said second input buffer, respectively; | |
| a first and second output buffer, each having a single, non-inverting high impedance input which are each connected respectively to the combined outputs of said first and second opposing current mirrors, each having open loop voltage gains not exceeding unity, and each having low impedance outputs; | This element is located on the integrated circuit contained in the product. |
| a first current rail traversing through said first output buffer, a second current rail traversing through said second output buffer, each current rail for supplying currents to said respective first and second output buffers' low impedance outputs; | This element is located on the integrated circuit contained in the product. |
| dual opposing voltage supply rails for driving both said opposing current mirrors, subsequent first and second input buffers and said first and second output buffers; and | This element is located on the integrated circuit contained in the product. |
| a feedback network means of passive components is connected from at least one output of said first and second output buffers to at least one end of the load resistor means. | This element is located on the integrated circuit contained in the product. |

Glore Decl., Ex. C at 2-3. This same language is provided for every element of every product charted. *See generally* Glore Decl., Ex. C.

For each of the nine product groups specifically charted, Bender also provides a brief description of the functions of the accused devices without reference to the patent. With the exception of one product group, Bender then recites the same statement for each of the product groups identified:

> The architecture disclosed and claimed in the Bender patent has become known in the industry as a current feedback amplifier but it also discloses and claims a voltage feedback variation. Products such as [product names], make use of this architecture. The

datasheet makes this very clear . . . .[2]

Glore Decl., Ex. C at 1. Bender also provides a quote from a representative datasheet for each product group which states that the product "employ[s] current-feedback techniques." *Id.* Finally, Bender provides a block diagram from the datasheet with the entire product circled in red. One example is shown below.



Glore Decl., Ex. C at 1.

Along with the claim charts, Bender claims, "[t]he products indicated below are a representative sample of such products. All larger-scale (such as VLSI) Maxim products which use these building blocks are infringing products as well." Glore Decl., Ex. C at 1. Bender also accused "[a]ll versions of all of Defendant's products implementing high speed analog amplifiers made, used, offered for sale, or sold in, or imported into, the United States since March 16, 2003, or otherwise performing tasks for which high speed analog amplifiers are used." Glore Decl., Ex. B at 3. Bender has provided an "annex" to his contentions listing several categories of Maxim products with part numbers associated with each category. However, there is no correlation provided between the annex list and the nine representative claim charts. Aside from the bare identification of the products listed in the annex, none of the additional alleged larger-scale products are identified. *See* Glore Decl., Exs. B and C.

---

[2] The last claim chart recites a similar statement, but relies on the patent's disclosure of the current feedback variation.

The parties have met and conferred on the issues presented in this motion, but have not come to an agreement. Glore Decl. ¶ 6; Ex. D, communications between J. Glore and D. Kuhn. In the course of these discussions Bender admitted that he has not purchased any accused products, no examined, tested, or reverse engineered any such products. He has conceded that his pre-investigation to date consists solely of reviewing data sheets for some of the accused products. On October 1, 2009, Bender explicitly indicated that he is unwilling, and unable, to provide any additional detail in his claim charts, and has further refused to provide the names and model numbers for all of the accused Maxim products, or to group these products into representative groupings. Glore Decl., Ex. D.

Maxim is not the only party to have this type of concern regarding Bender's actions. In several, if not all, of Bender's other cases, the defendants have noted deficiencies in the level of specificity in Bender's allegations of infringement. *See e.g.,* Glore Decl., Ex. E, Motorola Inc.'s Motion to Dismiss for Failure to State a Claim, dated September 9, 2009 entered as D.I. 11, in Northern District of California, Civil Case Number 4:09-cv-01245-SBA, *Bender v. Motorola, Inc.,* and Glore Decl., Ex. F at 2, Comment Re Motion To Relate Cases dated July 31, 2009, with its Exhibits 2 and 3, that are entered as D.I. 43, D.I. 43-2, and D.I. 43-3, respectively, in Northern District of California, Civil Case Number 3:09-cv-01140-WHA, *Bender v. Exar Corp.* In several cases, defendants have moved for dismissal for failure to state a claim because Bender's Complaint in those cases failed to identify a single accused product. *See e.g.,* Glore Decl., Ex. E. Additionally, in Rule 26 conferences conducted, and at the Exar Case Management Conference, Bender's counsel has requested that the Patent Local Rules be turned on their head to force the defendants to produce schematics and other technical information before Bender is required to serve his Rule 3-1 infringement contentions. *See e.g.,* Glore Decl., Exs. E and F. At least one other Court has already admonished Bender on his apparent lack of due diligence, stating that Bender "should have hired legions of people to go out and reverse engineer these things. And it's his own problem if he doesn't know why it's infringement." Glore Decl., Ex. G at 15, Transcript of Case Management Conference in front of Judge Alsup, held on July 16, 2009 in Northern District of California, Civil Case Number 3:09-cv-01140-WHA, *Bender v. Exar, Corp.* At least

three other defendants, Freescale Semiconductor, Inc., International Business Machines, Corp., and Intersil Corporation, have already filed a motion to compel Bender to amend his infringement contentions to comply with Patent L.R. 3-1, and other defendants are also planning to file similar motions.[3]

## III. ARGUMENT

In the past two years, the Supreme Court has significantly increased the level of specificity required to be plead by a plaintiff in Federal Court before the case is allowed to proceed. A plaintiff must allege "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In requiring sufficient specificity to reach this plausibility standard, the Supreme Court has emphasized that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, at 558. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, at 1954. The Federal Circuit has long recognized that a "patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Judge Patel in the *Micromesh* case put it best, stating that the rules requiring a plaintiff to perform significant, early due diligence exist to prevent a "windfall for plaintiffs … who file ill-advised and poorly researched actions hoping to extract nuisance settlements before the myriad defects in their allegations can be fully explored. The court will not sanction such an approach." *Micromesh*

---

[3] Freescale's Notice Of Motion And Motion To: 1. Compel Infringement Contentions That Comply With Patent L.R. 3-1, And 2. Relieve Freescale Of Its Discovery Obligations Pending Service Of Compliant Infringement Contentions, entered as D.I. 28 in Northern District of California, Civil Case Number 4:09-cv-01156-PJH, *Bender v. Freescale Semiconductor, Inc.*; IBM's Notice of Motion And Motion To: 1. Compel Infringement Contentions That Comply With Patent L.R. 3-1, And 2. Relieve IBM Of Certain Discovery Obligations Pending Service Of Compliant Infringement Contentions, entered as D.I. 18 in Northern District of California, Civil Case Number 5:09-cv-01249-RMW, *Bender v. International Business Machines Corp*; Intersil's Notice of Motion And Motion To: 1. Compel Infringement Contentions That Comply With Patent L.R. 3-1, And 2. Relieve Intersil Of Certain Discovery Obligations Pending Service Of Compliant Infringement Contentions, entered as D.I. 29 in Northern District of California, Civil Case Number 4:09-cv-01155-CW, *Bender v. Intersil Corporation*.

*Tech. Corp. v. Am. Recreation Prods. Inc.*, No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241, at *21 (N.D. Cal. Aug. 29, 2007).  Unless this Court intervenes, plaintiff's failure to perform the required due diligence will cause "massive factual" inquiry to proceed unnecessarily.

### A.  Bender's Infringement Contentions Violate Patent L.R. 3-1
#### 1.  Bender's Infringement Contentions Fail to Specifically Identify Where Each Claim Element is Present Within Each Product

The Patent Local Rules require Bender to provide specific details in his disclosure of his infringement theories.  By its very language, Patent L.R. 3-1(c) requires infringement contentions ("ICs") that must "identify[] specifically where each limitation of each asserted claim is found within each Accused [product]."  Patent L.R. 3-1(c).  "The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims."  *Intertrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 U.S. Dist. LEXIS 22736, at *6 (N.D. Cal. Nov. 26, 2003).  The specificity required by Patent L.R. 3-1(c) requires that the patent holder provide the accused infringer with more than just the language of the patent.  *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, at *18 (N.D. Cal. Aug. 13, 2002).  The ICs must do more than simply state that the product infringes, it must specify where in the product each limitation is located.  *Renesas Tech. Corp. v. Nanya Tech. Corp.*, Case No. C 03-05709 JF (HRL), 2004 U.S. Dist. LEXIS 23601, at *17 (N.D. Cal. Nov. 10, 2004).  The ICs must explain how each limitation is met by the product, and requires that the product be compared on an element by element basis to the asserted claims.  *Intertrust,*  at *7 (citing *Network*).  The *Intertrust* court made it clear that,

> At the Patent Local *Rule 3-1* Disclosure stage, a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required.

*Id.* at *7; *see Network*, at *12-13 (finding ICs insufficient when based solely on marketing collateral and whitepapers).  In determining that Patent L.R. 3-1 requires reverse engineering, the courts have made clear that a patent plaintiff's obligations under Patent L.R. 3-1 are an extension of plaintiff's Rule 11 obligation to perform an adequate prefiling analysis.  *Intertrust*, at *7; *Network*, at *12.  In hardware cases, Rule 11 typically requires reverse engineering even before

the Complaint is filed, well before a plaintiff's Patent L.R. 3-1 disclosures are due. *See Network*, at *15.

Bender has failed to comply with Patent L.R. 3-1 because his claim charts contain absolutely no information as to where each claim element is present in each accused product. Rather than provide detailed information such as that described by the *Intertrust* court, Bender provides only vague statements regarding the products' use of a current or voltage feedback amplifier architecture in the product. As to the elements of the asserted claims, Bender's chart merely states that the "element is located on the integrated circuit contained in the product."[4] Bender's circling of the product in a block diagram does nothing to demonstrate whether any particular claim element is found within the product. Circling part, or all, of a block diagram and stating that the "element is in the product" is the equivalent to owning a patent on the shape of a car engine piston, and then circling a photo of the car and stating that you can conclude that every element of the shape and size of the patented piston is "in the car" just by pointing to the car. However, this identification does nothing to demonstrate where, or how, Bender contends any particular claim element is found within that identified portion. For example, Bender's claim charts do not indicate where the "first input buffer" as required by asserted claims 8 and 35 is located within each Maxim product, or where one might find the required "pair of opposing current mirrors". In fact, as can plainly be seen in his chart, Bender fails to specifically point to any of the claimed elements of asserted claims 8 and 35.

Moreover, Bender violates Patent L.R. 3-1(c) by failing to identify any claim elements that are governed by 35 U.S.C. § 112(6), even though independent claims 8 and 35 both indisputably are written to include means-plus-function language. Similarly, Bender's blanket contention that "any claim element or limitation that may be found not to be literally embodied in the Accused Instrumentalities, Plaintiff contends in the alternative that the Accused Instrumentalities embody such claim elements or limitations under the doctrine of equivalents" is altogether insufficient under Patent L.R. 3-1(e) to adequately disclose Bender's position as to

---

[4] Even if Bender had included the language of the claim in the right-hand column of his claim chart, the *Network* court specifically ruled that contentions merely mimicking the claim language were "plainly insufficient." *Network*, at *18.

alleged infringement under the doctrine of equivalents. Glore Decl., Ex. B at 4.[5]

The sum total of Bender's contentions consists of a flawed syllogism. He states that the products include amplifiers, that he invented an amplifier, and therefore, the products infringe his patent. However, as Bender learned when the United States Patent Office cancelled several of his claims during re-examination, he did not invent all amplifiers, and not even all high-speed or "buffered transconductance amplifiers" as he asserts in his contentions.[6] Bender's contentions are akin to an inventor who has created a specific type of light bulb, walking down the street pointing at light and claiming, "it must infringe," irrespective of whether the light contains an incandescent, fluorescent, LED, neon, or halogen light bulb.

In short, Bender's infringement contentions meet none of the specificity requirements of Patent L.R. 3-1.

### 2. Bender's Infringement Contentions Fail to Specifically Identify All Products Accused of Infringement

Bender has also violated Patent L.R. 3-1 by failing to specifically identify all allegedly infringing products as required by Patent L.R. 3-1(b). Patent L.R. 3-1(b) requires that

> Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known.

Patent L.R. 3-1(b). In his ICs, Bender claims, "[t]he products indicated below are a representative sample of such products. All larger-scale (such as VLSI) Maxim products which use these building blocks are infringing products as well," Glore Decl., Ex. C at 1, and that "[a]ll versions of all of Defendant's products implementing high speed analog amplifiers made, used, offered for sale, or sold in, or imported into, the United States since March 16, 2003, or otherwise

---

[5] Bender has confusingly included two section headings (III and IV) relating to the doctrine of equivalents in his contentions. However, based on the content of those sections, Maxim assumes that only section IV is intended to discuss Bender's doctrine of equivalents contentions. *See* Glore Decl., Ex. B at 3-4.

[6] In reexam, the '188 had several claims canceled, including claim 1, claiming a buffered transconductance amplifier.

performing tasks for which high speed analog amplifiers are used" also infringe. Glore Decl., Ex. B at 3. Bender also provides an "annex" listing several part numbers, but does not indicate whether these part numbers consist of the entire set of accused products. Furthermore, the annex provides several categories of products, yet only the first unnamed category is represented in any of the nine claim charts.

If certain criteria are met, a patent plaintiff may be permitted to provide representative claim charts based on a subset of accused products. *See Renesas*, at *6. However, to take advantage of the representative claim chart methodology, a patent plaintiff must satisfy two requirements. First, the plaintiff must identify, by name and model number if known, each and every product that it intends to accuse, even if it does not provide claim charts for each such product. *See Intertrust*, at *6. Second, the plaintiff must place each and every accused product into one of the groups for which he has provided a claim chart, and explain why such a grouping is reasonable. *See Renesas*, at *9-10 (holding that there must be a reasonable inference to determining representative groups for an infringement analysis.) Here, Bender has neither provided a list of which products belong in which charted representative group, nor has he provided any explanation of the grouping criteria. Bender's failure to identify the name and model number of each infringing product, as well as to provide an identification of how such products should be grouped, violates Patent L.R 3-1. By violating the rules, Bender has left Maxim without the fundamental information of what products are at issue and how each of them is accused of infringing the '188 Patent.

**B. Bender Should be Compelled to Comply with Patent L.R. 3-1**

Bender's failure to provide proper infringement contentions has severely prejudiced Maxim's ability to defend itself against Bender's unfounded accusations. First, Maxim is prejudiced because it is forced to prepare defenses as to one hundred and ninety three products even though Bender has altogether failed to identify a cogent theory of infringement on which it relies for *each* asserted element of *each* asserted claim for *each* of the falsely accused products. Instead, Bender generally alleges that the accused products fall into one of nine "groups" and then purports to rely on a single data sheet as its sole "evidence" of infringement for every device in

the entire group. Many of the products accused are not even represented in the groups. Bender should not be able to use his infringement contentions as a "fishing expedition." Second, Maxim is prejudiced because Bender has tried to reserve an ability to assert contentions of infringement under the doctrine of equivalents later in the case; to improperly allow Bender to do so would severely prejudice Maxim by forcing it to belatedly develop new defenses and obtain new evidence after discovery is either closed or substantially complete. Third, Maxim is prejudiced because Bender has not specifically identified the structure, act, or material in the accused product associated with the means-plus-function elements in the asserted claims, which radically affects Maxim's search for prior art to submit with its Patent L.R. 3-3 and 3-4 disclosures. As a result, Maxim is unable to adequately prepare its defenses in this case. *See e.g., Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) ("*AVG*"). This factor weighs heavily in favor of compelling Bender to provide compliant infringement contentions.

### 1. Bender Should be Compelled To Perform Reverse Engineering

The Patent Local Rules require a level of detail equivalent to reverse engineering. *See Network*, at *12, 16; *Intertrust*, at *7. It is generally recognized that "[i]n non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit." *AVG*, at 560. In fact, in the cases filed by Bender, one Court has already stated that Bender "should have hired legions of people to go out and reverse engineer these things." Glore Decl., Ex. G at 15.

To assist the Court in analyzing Bender's requirements, we have submitted with this Motion a declaration from an expert in reverse engineering, Matthew Garong. Mr. Garong is an engineer working for Chipworks, a leading facility for performing reverse engineering analysis of semiconductor devices. Mr. Garong's declaration demonstrates that Chipworks, and indeed, anyone in the reverse engineering industry, could readily reverse engineer chips such as Maxim's to a sufficiently detailed level so as determine exactly where each element of the '188 Patent was found in an accused device.[7]

---

[7] In fact, companies like Chipworks could have also aided in the preparation of the

As discussed above, chips, such as those in the annex list and those represented in the nine product groups specifically charted by Bender, may have hundreds or thousands of circuits, including the allegedly infringing amplifier circuits. The only way to determine the exact electrical elements that exist within a semiconductor device is to either have a detailed technical specification for the device, or to ascertain the layout and presence of these elements through reverse engineering. Garong Decl. ¶¶ 21, 23. Since a patent plaintiff in an electrical circuitry case will typically be unable to obtain detailed technical specifications for semiconductor devices prior to filing suit, it is a *de facto* requirement that the patent plaintiff perform reverse engineering on the accused products prior to filing suit to satisfy his Rule 11 requirements and his later Patent L.R. 3-1 obligations.

Reverse engineering, unlike the data sheets relied upon by Bender, can provide the details required in this case. Garong Decl. ¶¶ 19, 21, 23. The "block diagrams" available in the publicly available Maxim data sheets do not provide information at the circuit level.[8] Garong Decl. ¶ 19. Block diagrams are similar to flow charts. Garong Decl. ¶ 16. They obscure the actual circuitry and instead explain generally what functions happen. Indeed, block diagrams do not show the specific electrical elements that comprise any specific circuit of the product. Garong Decl. ¶ 19. In contrast, reverse engineering can be performed to ascertain the exact layout of the specific electrical elements that comprise every circuit on a semiconductor device. As described in detail in the Garong Declaration, an entire industry exists that routinely performs such reverse engineering. Companies such as Chipworks provide the kind of detailed technical information about a product that will enable a patent plaintiff to both ascertain if a product infringes, and to prepare a claim chart that shows where each element of each asserted claim exists within the accused product.

_____

(continued…)

infringement contentions through the preparation of claim charts incorporating the results of the reverse engineering.

[8] In fact, the block diagrams do not even definitively indicate whether the circled blocks have amplifiers, let alone what the composition of those individual amplifiers is.

By requiring reverse engineering, the Patent Local Rules ensure that Bender commits to his infringement theory, and allow Maxim to properly prepare its defense, including the submission of invalidity contentions and claim constructions. *Intertrust*, at *4 (The Patent Local Rules are "designed to 'require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed.'") Bender's lack of detail has severely prejudiced Maxim's ability to defend itself. *See e.g.*, *AVG*, at 560 ("To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense.") Maxim is left completely in the dark as to how Bender interprets each element of the claims, and how each element allegedly is being practiced by the accused products. Maxim is not requesting that the Court impose additional requirements or burdens on Bender through this motion. To the contrary, Maxim is merely requesting that Bender be required to perform the analysis required of any patent-plaintiff. Analysis that should have been performed before the suit was filed. Pursuant to Federal Rule 11, Bender is already obligated to perform an adequate pre-suit analysis. *Network*, at *13. For hardware cases, such as the instant case, Rule 11 requires reverse engineering. *Id.* at *16. Merely acquiring non-detailed datasheets and preparing non-compliant claim chart is insufficient. *See Micromesh*, at *12 (in the context of Rule 11 and 35 U.S.C. 285, finding that "plaintiff was required to engage in some degree of competent analysis of [acquired samples of the accused products] before filing suit. Apart from obtaining the product sample and preparing a boilerplate claim chart, plaintiff has provided no evidence that its investigation was reasonable.") Furthermore, it is generally recognized that "[i]n non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit." *AVG*, at 560; *see also, Network*, at *16; *Micromesh*, at *8.

As discussed above, the courts have held that a plaintiff's Rule 11 analysis is properly required by Patent L.R. 3-1. *Intertrust*, at *7 (*citing Network*). Thus, Bender is already obligated, based on his Rule 11 obligations, to provide Maxim with the results of his reverse engineering, or its equivalent. Additionally, the compulsion to amend his ICs does not add any burden. Any burden stemming from the Court's Order requiring Bender to amend its ICs necessarily stems

from Bender's failure to provide sufficient ICs when the Patent Local Rules initially called for their disclosure.

Bender admits that he has not reverse engineered any of the Maxim parts.  See Glore Decl. ¶ 6.  Furthermore, Bender effectively concedes that the block diagrams are insufficient to provide additional detail in his statements that additional discovery is needed before detailed ICs can be provided.  Glore Decl., Ex. F at 2.  However, there is no reasonable excuse as to why Bender did not employ the services of Chipworks, or any of the other reverse engineering facilities to obtain the required detail for preparing his infringement contentions.  As the District Courts have noted, "Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *ConnecTel, LLC v. Cisco Sys. Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005) (considering patent local rules substantially similar in nature to those in the Northern District of California).

Bender's expectations for financial recovery and the expense he threatens to inflict on the defendants more than justifies the cost of a reasonable investigation.  The courts recognize that defending against a patent litigation is expensive, and that the Rule 11 requirements exist to prevent undue expense in defending against frivolous claims. *See View Eng'g*, at 986.  The average cost of defending a patent infringement case such as Bender's is approximately $4.1M. Glore Decl., Ex. H.  Considering that Bender has simultaneously initiated suits against 37 defendants, he has set in motion processes that could cost the companies he has accused over one hundred million dollars.  In addition, Bender's settlement demands are in the millions of dollars. Multiplied by all of the defendants he has sued, Bender is demanding hundreds of millions of dollars in settlements from his lawsuits.

In contrast, the cost per chip to reverse engineer is only fifteen to twenty thousand dollars. Supplemental Declaration of Matthew Garong ¶ 3.  Bender's expectations for profit from these lawsuits make the required investment of reverse engineering more than reasonable and, in any case, a requirement before he can proceed.  Therefore, Bender should be compelled to conduct sufficient reverse engineering to be able to demonstrate where each element of each asserted

claim exists in the accused products.

### 2. Bender Must Identify All Accused Products

In addition to being required to produce updated Patent L.R. 3-1(c) claim charts incorporating reverse engineering results, Bender must also amend his identification of accused products to comply with Patent L.R. 3-1(b). Bender's current identification of products, including a bare-bones listing of several products, nine charted representative product groups, and a promise of every other Maxim product waiting in the wings does not provide Maxim with the proper information to defend itself. Bender has provided no specific information as to the other products Bender is accusing. *Intertrust*, at *6 (noting that the defendant "cannot . . . be expected to guess which versions of its products [plaintiff] believes to have [functionalities] that infringe its [] patents.") In addition, by leaving the identification nebulous, Bender is impermissibly seeking to expand discovery to every part ever made by Maxim.

In addition to providing the specific identification of all accused parts, Bender must provide the groupings of parts that he intends to rely upon in his contentions. Currently, Bender has provided charts for nine representative product groups, but does not explain what they are representative *of*, and whether the remaining products listed in the annex also fit into those charts. Again, this lack of detail makes it impossible to determine Bender's theories of infringement and prejudices Maxim's ability to defend itself. If Bender is unable to provide the specific identification of all products he contends infringe the '188 Patent, then the Court should limit Bender to pursuing infringement for only those specific chips he can identify.

### C. The Court Should Relieve Maxim of its Discovery Obligations Until Bender Supplies His Amended ICs

This Court has the inherent power to delay Maxim's discovery obligations until Bender complies with Patent L.R. 3-1. Facing similar issues, other courts in the Northern District have forced plaintiff to meet its Patent L.R. 3-1 obligations before requiring a defendant to comply with Patent L.R. 3-3 or 3-4. *See Intertrust*, at *10-11 (ordering plaintiff to amend deficient preliminary infringement contentions ("PICs") and granting stay of defendant's Patent L.R. 3-3 and 3-4 disclosures until plaintiff filed amended PICs); *see also, Network*, at *20-21 ("The court

1   strikes NCT's second revised preliminary contentions and require[d] NCT to provide revise[s]

2   preliminary contentions . . . . All discovery in this action is hereby STAYED until NCT serves its

3   revised preliminary contentions.")

4        Unless and until Bender complies with his obligations under Patent L.R. 3-1, Maxim

5   should not be required to produce its invalidity contentions and confidential technical documents.

6   Bender's ICs are clearly insufficient. Without relief from the Court, Maxim is currently obligated

7   to serve its Patent L.R. 3-4 disclosures, which include its confidential technical specifications, by

8   November 13, 2009. However, forcing Maxim to comply with this deadline before Bender is

9   required to fix his infringement contentions will result in an improper flip-flopping of obligations

10  that the Patent Local Rules do not envision. Once Bender has Maxim's detailed specifications,

11  Bender will certainly attempt to completely overhaul his contentions, thus avoiding his entire

12  Patent L.R. 3-1 obligation. Such a tactic is also contrary to the Patent Local Rules' limited

13  grounds for amending infringement contentions. *See Townshend Intellectual Prop. L.L.C. v.*

14  *Broadcom Corp.*, No. 06-05118 JR (RS), 2007 U.S. Dist. LEXIS 51792, at *8 (N.D. Cal. July 5,

15  2007) (ordering amendment of contentions before defendant was required to produce technical

16  information to avoid "pre-planned, wholesale revisions").

17       Relieving Maxim of its discovery obligations pending the service of revised contentions

18  serves the same goals as compelling the amendment, namely avoiding prejudice to Maxim with

19  respect to its ability to prepare its invalidity defense while ensuring that discovery takes a proper

20  and ordinary course. *See Intertrust*, at *4; *Townshend*, at *8; *AVG*, at 560. As the clock is

21  already running for Maxim to disclose both its Patent L.R. 3-3 invalidity contentions and its 3-4

22  technical disclosures, Maxim would be particularly prejudiced in the near term if it had to prepare

23  these contentions without having a sufficient understanding of Bender's infringement theories and

24  of the scope of the accused products in the case. Accordingly, as part of its request for relief,

25  Maxim requests that its obligations to disclose invalidity contentions under Patent L.R. 3-4 be

26  postponed until 45 days after such time as Bender is able to provide updated ICs commensurate

27  with this Court's Order.

28

## IV. CONCLUSION

For the foregoing reasons, Maxim respectfully requests that the Court grant Maxim's motion to compel Bender to amend its ICs and to relieve Maxim of its obligations to produce its confidential technical specifications until such time as Bender complies with this Court's order.

Dated: October 16, 2009

Respectfully submitted,

Jones Day

By: _/s/ Gregory L. Lippetz_
    Gregory L. Lippetz

Counsel for Defendant
MAXIM INTEGRATED PRODUCTS, INC.

SVI-72922v4