February 23, 2010

CM/ECF
Judge Susan Illston
U.S. District Court
450 Golden Gate Avenue
San Francisco, CA, 94102

    Re:    *Bender v. Maxim Integrated Products, Inc.*, Case No. C 09-01152 SI
            Discovery Matter

Judge Illston:

    Defendant Maxim Integrated Products, Inc. ("Maxim"), submits this letter in reply to plaintiff Gregory Bender's ("Bender") opposition, (D.I. 50), to Maxim's motion to strike Bender's infringement contentions, (D.I. 48).

    **INTRODUCTION:** Bender's opposition in no way proves that he has complied with the Patent Local Rules regarding the sufficiency of his infringement contentions. Bender unsuccessfully attempts to lower the requirements of the Patent Local Rules. Then, Bender tries to prove that he has complied with his newly-defined lowered standard. Throughout his opposition, Bender relies on irrelevant and, in many cases, inaccurate facts and law to justify his continued refusal to perform the investigation required of a patent plaintiff in this Court. Because he already had a chance to amend, and has shown no reason why a second chance will result in compliant contentions, Maxim's motion to strike should be granted.

    **BENDER FAILS TO JUSTIFY LOWERING THE STANDARD FOR INFRINGEMENT CONTENTIONS:** Bender cannot dispute that the Patent Local Rules require Bender to "identify[] specifically where each limitation of each asserted claim is found within each Accused [product]." Patent L.R. 3-1(c). Nor does Bender deny that his asserted patent claims include limitations described with schematic-level detail. As a result, Bender must identify, at a schematic level, the location of each of the limitations of his asserted claims.

    None of Bender's cited cases relieve Bender from providing schematic-level details in his contentions. Four of Bender's cases explicitly support the proposition that the amount of detail required is determined by the level of detail in the claim elements. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301-02 (Fed. Cir. 2004) (patentee not sanctioned where infringement investigation of a claim element for a "therapeutically effective amount" of an ingredient in a lotion consisted of obtaining a sample of the product, verifying the claimed ingredient in the ingredient list, and obtaining marketing literature which stated that the ingredient was present in "therapeutic" quantities); *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2003 U.S. Dist. LEXIS 9881 (N.D. Cal. Mar. 21, 2003) ("*Network II*"); (finding a patentee was able to include specific detail without reverse engineering in light of the specific claims at issue); *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760 RMW (RS), 2007 U.S. Dist. LEXIS 29870 (N.D. Cal. Apr. 5, 2007) (same); *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004) (same). Bender's reliance on *Micromesh Tech. Corp. v. Am. Recreation Prods., Inc.*, No. C-06-6030 MHP, 2007 U.S. Dist. LEXIS 64241 (N.D. Cal. Aug. 29, 2007), is similarly misplaced, as

the court in *Micromesh* **sanctioned** the patentee under Rule 11 because, even thought the patentee had obtained samples of the accused product, the patentee had not engaged in "an adequate infringement analysis after the threshold step of obtaining the necessary product samples." *Id.* at 9-10.

Bender's reliance on cases involving software source code are inapplicable here. For example, the Court in *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560-61 (E.D. Tex. 2005) held that reverse engineering was not required because "***[s]oftware cases present unique challenges*** for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself." *Id.* (emphasis added). Tellingly, the court noted this was in direct contrast to "non-software patent cases, [where] plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit." *Id.* The fact that Maxim's schematics may not be published is irrelevant. As this Court recently held in another of the cases brought by Bender on this patent, Bender "argues that he cannot be more specific without obtaining defendant's detailed schematics, but the Court will not permit plaintiff to proceed at this point in the absence of claim charts containing more substantive infringement contentions." *Bender v. Micrel, Inc.*, No. C 09-01144 SI, 2010 WL 520513, at *2 (N.D. Cal. Feb. 6, 2010).[1]

Bender resorts to speculating about what a judge in another case, presented with different infringement contentions, might have done in that case. Bender argues, without citing to any factual support, that the detail in his contentions should be adequate because "[i]n the opinion of counsel for Mr. Bender, Judge Seeborg was very close to ruling that the IBM infringement contentions and claim charts were sufficient." (D.I. 50 at 5.) Counsel for Maxim have actually transcribed the referenced November 13, 2009 hearing in the *Bender v. IBM* matter[2] (C.A. No. 5:09-cv-01249-RMW), which tells a very different story. Judge Seeborg stated that he was not yet ready to rule on whether reverse engineering would ultimately be required but felt that "what I see now [in Bender's Infringement Contentions] isn't enough, you've got to try again and I'll take a look at it then and see." (Ex. at A at 9:15-16.)

While Maxim and other defendants have argued that reverse engineering is one possible method to obtain this information, it was ultimately Bender's responsibility to determine how to conduct his investigation to comply with his obligations. The fact that an investigation may cost money has been found to be irrelevant. *See View Eng'g, Inc., v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 985 (Fed. Cir. 2000) (affirming imposition of Rule 11 sanctions for failure to undertake a pre-suit investigation where the stated reason for failing to analyze the accused device was that the accused machine "cost several hundred thousand dollars to purchase" and the attorney believed "it did not make any economic sense to purchase a machine just for the purpose of making further

---

[1] Bender argued in his opposition that because Jones Day was counsel for the plaintiff in *Network II*, "one would think [Jones Day] has a duty to cite [that] case even where the ruling is contrary to the position taken and advocated." (D.I. 50 at 4.) While *Network II* is not contrary to Maxim's position as described above, given Bender's argument, it is curious that he did not cite *Bender v. Micrel*, which issued six days before he filed his opposition.

[2] The November 13, 2009 hearing was not transcribed by a court reporter. Counsel for Maxim obtained an audio recording of the hearing from the Court, and have prepared a transcription of this recording, which is attached as Ex. A to the Schmid Declaration. Counsel can submit a copy of the audio recording, if the Court so requests.

investigation"). Nor should Bender's unwillingness to pay for his litigation obligations shift those obligations to Maxim. As this Court has recently noted, the Patent Local Rules are designed in part to "reduce the likelihood that defendant will need to spend time and money defending products that were mistakenly included in plaintiff's contentions." *Bender v. Micrel*, at *3.

Finally, Bender resorts to significant misrepresentations regarding the *Bender v Texas Instruments* ("TI") matter to try to salvage his contentions. First, it is completely irrelevant whether or not TI produced schematics, and what those schematics may or may not have shown. Second, Bender is simply wrong: the court never compelled TI to produce schematics in that case, TI produced its schematics according to the Patent Local Rules, and, when the schematics were produced, Bender voluntarily dropped more than one-third of his accused products from the case.[3] (*See* Ex. B.)

Nowhere in Bender's opposition does he present a single justification for lowering the Patent Local Rule requirements regarding infringement contentions. Thus, Bender's contentions must identify the location of each limitation of his patent with schematic-level detail.

**BENDER HAS NOT MET THE STANDARD FOR SPECIFICITY IN CONTENTIONS:** As Maxim described in its opening brief, Bender's Amended Infringement Contentions have not identified the location of specific limitations of Bender's claims at the same level they were claimed. (*See* D.I. 48 at 2-3.) Multiple elements are not located, including the first current rail, the pair of opposing current mirrors, etc. Nor does Bender even argue that his contentions identify "specifically where each limitation" of his claims are located. Instead, Bender claims that "[a]ny analog electrical engineer will understand them and the underlying schematics." (D.I. 50 at 2.) But, even if this statement were true, the local rules do not allow Bender to avoid his duty to locate the limitations of his claim by merely asserting that someone else could do it for him. Bender's contentions are not sufficient and should be struck.

Bender's reliance on a completely new "presentation," containing another fabricated circuit diagram, does nothing to enhance his contentions. For example, as shown in Exhibit C, Bender fabricates a brand new diagram, completely changing the components and how they are arranged from the fabricated circuit that was the foundation for his original contentions. Further, even if the presentation were interpreted as a second request to amend, it wholly fails to cure the problems with his contentions. First, Bender has not made a "showing of good cause," as is required for amendment. Patent L.R. 3-6. Second, allowing an amendment based on the presentation would be futile, as the presentation also does not "identify[] specifically where each limitation of each asserted claim is found within each Accused [product]," as required by Patent L.R. 3-1(c). For example, the slides in the presentation admit that they do not show the specific location of the "pair of opposing current mirrors" element of claim 8 (D.I. 50-1 at 11), or the specific location of the "first and second pair of opposing current mirrors" (D.I. 50-1 at 23) or "dual opposing voltage supply rails" elements of claim 35 (D.I. 50-1 at 26.).

**BENDER HAS FAILED TO SHOW WHY THIS CASE SHOULD NOT BE LIMITED TO THE NINETEEN PRODUCTS SPECIFICALLY IDENTIFIED BY BENDER:** Bender's

---

[3] It is also troubling that Bender made these references to the TI schematics, as the protective order from that litigation states that TI's confidential schematics ***could only be used for that litigation***. (*See* Ex. D at 7, ¶14.)

opposition does not even address Maxim's request to limit the products in this case.  (*See* D.I. 50.)  Bender does not deny that Patent L.R. 3-1(c) requires a claim chart for each accused product.  Nor does he deny that, as this Court has recently recognized, "representative" claims chart may only be permitted for a larger group of accused products where the patentee "demonstrate[s] that the 'representative' products are in fact accurate presentations of the other . . . allegedly infringing products."  *Bender v. Micrel*, at *3.  Inexplicably, Bender does not even attempt to show how his current claim charts even arguably meet either of these tests.  Therefore, Maxim's request to strike all products other than the nineteen specifically identified by Bender should be granted.

**BENDER DOES NOT DENY THAT HIS CONTENTIONS OF INDIRECT INFRINGEMENT ARE INADEQUATE:**  Bender's opposition did not address indirect infringement at all.  (*See* D.I. 50.)  As a result, it is undisputed that Bender's contentions, as currently served, do not meet the requirements to allege indirect infringement.  Bender's only mention of indirect infringement in the papers filed with his response is in his slide presentation, in which he adds a very small amount of detail, alleging that induced infringement occurs "where the customer, inter alia, sets the gain by adjusting the feedback loop."  (D.I. 50-1 at 18.)  First, Bender provides no justification as to why he could not have made this allegation earlier, and therefore no basis for amending his contentions pursuant to Patent L.R. 3-6.  Second, the statement still fails to provide sufficient detail to comply with Patent L.R. 3-1(d) as it does not identify, for each accused product, the specific acts of infringement or the conduct of Maxim that allegedly caused the infringement to occur.  Therefore, Maxim's request that Bender's indirect infringement allegations be struck from Bender's Amended Infringement Contention should be granted.

**RELIEF REQUESTED:**  Since Maxim's motion was filed, this Court has ordered Bender to provide more detail in his contentions, and has warned him that the consequences of failing to do so will be severe.  In his case against Maxim, Bender has already been given a chance to amend, and there is nothing to suggest that another amendment will cure the deficiencies in his contentions.  Bender's Amended Infringement Contentions should be struck in their entirety.  Alternatively, if the Court is inclined to allow Bender another chance to amend his contentions, Maxim requests that the Court: strike Bender's accusations of any products beyond the nineteen products specifically referenced in his charts, strike Bender's indirect infringement allegations, <u>and</u> compel Bender to supplement his existing claim charts to include schematic-level details.

Respectfully submitted,

By:     /s/ Gregory Lippetz
    Greg L. Lippetz
    State Bar No. 154228
    JONES DAY
    1755 Embarcadero Road
    Palo Alto, CA  94303
    Telephone:     650-739-3939
    Facsimile:     650-739-3900

Counsel for Defendant Maxim Integrated Products, Inc

SVI-78026v1