1    Gregory L. Lippetz (State Bar No. 154228)
     glippetz@jonesday.com
2    Cora L. Schmid (State Bar No. 237267)
     cschmid@jonesday.com
3    JONES DAY
     1755 Embarcadero Road
4    Palo Alto, CA  94303
     Telephone:      650-739-3939
5    Facsimile:      650-739-3900

6    Attorneys for Defendant
     MAXIM INTEGRATED PRODUCTS, INC.
7

8                           UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                            SAN FRANCISCO DIVISION

11

12                                              Case No.  C09-01152 SI

13   Gregory Bender,                            **MAXIM INTEGRATED
                                                PRODUCTS, INC.'S MOTION FOR
14                  Plaintiff,                   SANCTION OF DISMISSAL**

15          v.                                  **Date:        June 25, 2010**
                                                **Time:        9:00 a.m.**
16   Maxim Integrated Products, Inc.,           **Place:       Ctrm. 10, 19th Floor**
                                                **Judge:       Hon. Susan Illston**
17                  Defendant.

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

CASES

4

*Bender v. Broadcom Corp.*,
  No. C 09-01147 MHP, 2010 U.S. Dist. LEXIS 28336 (N.D. Cal. Mar. 22, 2010) ............... 11

5

6

*Bender v. Infineon Technologies North America Corp.*,
  No. C09-02112 JW (HRL), 2010 U.S. Dist. LEXIS 24096 (N.D. Cal. Mar, 16, 2010) ........ 11

7

*Bender v. Micrel Inc.*,
  No. C 09-01144 SI, 2010 U.S. Dist. LEXIS 18134 (N.D. Cal. 2010) ................................... 11

8

9

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................................ 9

10

*Elecs. for Imaging, Inc., v. Photoscript Group Ltd.*,
  No. C98-2759 SI (MED), 1999 U.S. Dist. LEXIS 7395 (N.D. Cal. May 11, 1999) ............... 9

11

12

*Hydge & Drath v. Baker*,
  24 F.3d 1162 (9th Cir. 1994) ................................................................................................. 9

13

14

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962) ............................................................................................................... 9

15

16

*Netsuite, Inc., v. CIPC Worldwide Holdings Corp.*,
  No. C 07-5235 SI, 2008 U.S. Dist. LEXIS 79446 (N.D. Cal. July 21, 2008) .................. 9, 10

17

*Refac Int'l, Ltd. v. Hitachi, Ltd.*,
  921 F.2d 1247 (Fed. Cir. 1990) ............................................................................... 9, 10, 11, 12

18

19

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*,
  105 F.3d 521 (9th Cir. 1997) ................................................................................................. 9

20

21

*Wanderer v. Johnston*,
  910 F.2d 652 (9th Cir. 1990) ............................................................................................... 10

22

STATUTES

23

Civil L.R 1-4. ................................................................................................................ 1, 9, 12

24

Civil L.R. 3-1 ...................................................................................................................... 2, 3, 4

25

Federal Rule of Civil Procedure 11 ........................................................................................ 2

26

Federal Rule of Civil Procedure 37 ............................................................................... 2, 9, 10

27

Federal Rule of Civil Procedure 37(b)(2)(A) .................................................................. 1, 9, 12

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................... 1

II. FACTS ................................................................................................................................ 2

III. ARGUMENT ...................................................................................................................... 3

    A. Bender Has Violated This Court's Order To Specify The Location Of Each Claimed Element In The Accused Products............................................................... 3

        1. Bender Violated This Court's Order By Assuming That Claim Elements Are Present In The Accused Products........................................... 4

        2. Bender Violated This Court's Order By Circling Portions Of A High-Level Datasheet.................................................................................. 6

        3. Bender Violated This Court's Order By Stating That Any Electrical Engineer Would Understand The Infringement Contentions...................... 7

    B. Bender Violated This Court's Order By Failing To Place Each Of The Accused Products Into A Representative Category. ................................................................ 7

    C. Bender Has Violated This Court's Order By Failing To Identify The Alleged Elements Of Indirect Infringement. .......................................................................... 8

    D. Dismissing This Action Is The Proper Remedy For Bender's Violation Of This Court's Orders................................................................................................. 9

IV. CONCLUSION ................................................................................................................. 12

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 25, 2010, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 10, 19th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Ave., San Francisco, California, the Honorable Susan Illston presiding, defendant Maxim Integrated Products, Inc., ("Maxim") will and hereby does move the Court for an order terminating this action under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the Court's inherent authority, and Civil L.R. 1-4. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in Support thereof, the Declaration of Cora L. Schmid and exhibits thereto, all pleadings and papers filed in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

### RELIEF REQUESTED

Maxim requests that the Court dismiss plaintiff's Complaint with prejudice as a terminating sanction under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the Court's inherent authority, and Civil L.R. 1-4.

### ISSUES PRESENTED

The issue to be decided is whether terminating sanctions should be imposed under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the Court's inherent authority, and Civil L.R. 1-4 for Bender's failure to comply with this Court's March 22, 2010 Order and with the Patent Local Rules of this Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Bender has failed to serve any compliant infringement contentions on any of the 37 defendants he chose to sue in this jurisdiction last spring. Bender has repeatedly disregarded the Court's rules in this case and in parallel cases. Courts and parties alike have been patient with Bender for months, going round and round with amended infringement contentions after amended infringement contentions and court order after court order. But Bender has not materially amended his contentions despite strong warnings that he must.

1    Bender's third infringement contentions in this case go too far.  They not only fail to

2    comply with the local rules, they also directly violate this Court's order.  In such a situation Rule

3    37 of the Federal Rules of Civil Procedure directs that the Court may dismiss Bender's action in

4    its entirety.  This litigation has been pending for over a year, and Bender has made clear that he is

5    unwilling to perform the most basic investigation of a patent case:  buying at least one accused

6    product and analyzing it to determine if there is a Rule 11 basis for this litigation.  *See* Fed. R.

7    Civ. P. 11.  Instead, Maxim has endured a year of litigation costs and uncertainties while Bender

8    repeatedly demands that Maxim do his work for him.

9    Bender should not be allowed to drag this case out indefinitely in the hopes of a windfall

10   settlement.  While he wastes judicial resources and keeps Maxim locked up in this litigation,

11   Bender has shown he has no interest in complying with the Court's rules and order.  The

12   perpetual cycle of motions to strike and amended infringement contentions must come to an end

13   some time.  And that time is now.

14   **II.    FACTS**

15   On September 29, 2009, Bender served his Patent L.R. 3-1 infringement contentions on

16   Maxim ("Bender's 1st ICs").  (Docket No. 25-2 and 25-3.)[1]  Because Bender's 1st ICs failed to

17   comply with the Patent Local Rules, Maxim filed a motion to compel amended contentions.

18   (Docket No. 24.)  While that motion was pending, the courts in the parallel matters of *Bender v.*

19   *IBM,* N.D. Cal. Case No. 5:09-cv-01249 RMW (PVT), and *Bender v. Intersil,* N.D. Cal. Case No.

20   4:09-cv-01155 CW (BZ), resolved similar motions by ordering Bender to amend his contentions

21   to comply.  As a result, Maxim withdrew its motion to compel on the condition and mutual

22   Stipulation that Bender amend his 1st ICs, as he had been ordered to do in the *IBM* and *Intersil*

23   cases.  (Docket No. 42).

24   On December 18, 2009, Bender served Maxim with his amended infringement contentions

25   ("Bender's 2nd ICs"), which are attached as Exhibit A to the co-filed Declaration of Cora L.

26   Schmid ("Schmid Decl.").  Because Bender's 2nd ICs continued to fall woefully short of the

27   _____

28   [1]  Where a different action is not specified, "Docket No." refers to a docket entry number
     in the present action.

1   Patent Local Rule requirements, Maxim filed a motion to strike, or in the alternative to compel

2   amended contentions.  (Docket No. 48.)  On March 22, 2010, this Court granted Maxim's motion

3   to compel, and ordered Bender to provide "infringement contentions that comply with Patent L.R.

4   3-1." (Docket No. 54.)  In its Order, the Court set forth several specific orders that Bender was

5   required to follow, namely that Bender:

6           (1)   "actually specify the location of each element within the accused product,"

7           (2)   "place all of the accused products into a representative category," and

8           (3)   describe each of the elements of the alleged indirect infringement.

9   (Docket No. 54 at 3:18-5:9.)  The Court also gave Bender specific guidance as to what to do—

10  and what not to do—to comply with each of these requirements.

11          In response to a stipulated request by the parties, the Court ordered that Bender's Second

12  Amended Infringement Contentions be served on Maxim on or before April 21, 2010.  (Docket

13  No. 56.)  On April 21, 2010, Bender's counsel asked Maxim for a week extension, citing a

14  number of family health issues.  Maxim consented to the extension, but informed Bender that

15  Maxim expected that Bender's second amended contentions would be informed by the recent

16  orders that had issued in several parallel Bender cases.  (*See* Schmid Decl., Ex. B.)  On April 28,

17  2010, Bender served his second amended infringement contentions ("Bender's 3rd ICs") on

18  Maxim.  (*See* Schmid Decl., Ex. C)  Bender's 3rd ICs comply with neither the Patent Local Rules

19  nor the specific requirements set forth in the Court's Order.  In fact, Bender's 3rd ICs are 26 pages

20  shorter than his 2nd ICs, and contain no new material information of any kind.

21  **III.    ARGUMENT**

22          **A.    Bender Has Violated This Court's Order To Specify The Location Of Each
                    Claimed Element In The Accused Products.**

23

24          Bender has clearly violated this Court's order requiring him to specify the location of each

25  element of each asserted claim in the accused Maxim products.  In its March 22, 2010 Order, the

26  Court held Bender's 2nd ICs "do not comply with Patent L.R. 3-1." (Docket No. 54 at 3:18-19.)

27  The Court then compelled Bender to serve infringement contentions that "specify the location of

28  each element within the accused product." (Docket No. 54 at 3:18-19, 5:13-14.)  To ensure that

1   Bender had specific guidance as to how to comply with its order, the Court set forth several

2   explicit directions that Bender must follow to comply with Patent L.R. 3-1.  The Court prohibited

3   Bender from "assum[ing]" the presence of any required element of his patent.  (*See* Docket No.

4   54 at 3:20-26.)  The Court held that Bender cannot merely circle generalized diagrams in a high-

5   level datasheet to identify the location of a claimed element.  (Docket No. 54 at 3:26-4:1.)

6   Finally, the Court held that Bender cannot shift his burden to Maxim by "[s]imply stating that any

7   electrical engineer would understand the infringement contentions."  (Docket No. 54 at 4:8-12.)

8   However, as described below, Bender's 3rd ICs contravene each of the Court's directives.

9   Bender's 3rd ICs continue to flaunt the Patent Local Rules and this Court's order by relying solely

10  on assumptions, high-level datasheets, and attorney argument.

11              **1.      Bender Violated This Court's Order By Assuming That Claim
                           Elements Are Present In The Accused Products.**
12

13      Bender's 3rd ICs violate the Court's order prohibiting Bender from "assum[ing]" the

14  presence of any required element of his patent.  (*See* Docket No. 54 at 3:20-26.)  Bender's 3rd ICs

15  still use the same assumptive phraseology that led the Court to issue its Order.  As to some

16  elements, such as the "dual voltage supply rails" element of claim 8, Bender assumes that it must

17  exist, but fails to provide even an argument as to the basis for his assumption.  (*See* Schmid Decl.,

18  Ex. C at C8.)  For other elements, such as the "first current rail" limitation of claim 35, Bender's

19  3rd ICs rely on pure argument and speculation that the element is "essential," that "[w]ithout

20  current rails . . . the buffers will not function," that "it is understood," and "required."  (*Id.* at

21  C12.)  Bender likewise argues that the "dual opposing voltage supply rails" limitation of claim 35

22  must be in the accused product because "[w]ithout such a network to distribute power, the

23  amplifier would not turn on."  (*Id.* at C14.)

24      As to other elements, Bender repeatedly tries to mask his failure to identify the specific

25  location of an element by assuming that the element exists, but stating that it is "obfuscated"

26  behind a dotted line in the data sheet diagram.  For example, for the "first and second pair of

27  opposing current mirrors" element of claim 35, Bender does not identify any specific location.

28  (*Id.* at C13.)  Instead, Bender assumes it exists, arguing that it "is obfuscated into" a dotted line,

MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                              CASE NO. C09-01152 SI

1  and arguing that "[w]ithout the current mirrors, the 'amplifier' would not behave as an amplifier."

2  (*Id.*)  Bender similarly assumes that the "pair of opposing current mirrors" and the "second input

3  stage" elements of claim 8, are also "obfuscated" behind dotted lines.  (*See id.* at C6-C7 and C7-

4  C8, respectively.)

5          Bender's tautological implication that the elements of Bender's claimed amplifier must be

6  present in order for the accused product to behave as an amplifier is not only an assumption, it is

7  a flawed assumption.  Bender's own expert has testified in a parallel case that there are many

8  circuit designs that will produce an amplifier other than the ones claimed by Bender.  (*See*

9  Schmid Decl., Ex. I at 27:13-24; 79:17-24.)  Bender and his counsel knew that the assumptions

10 and arguments regarding the "necessary" presence of the elements of the claims were false, yet

11 have now made them for the third time, this time in direct violation of the Court's order.

12         Perhaps the most glaring examples of Bender's continued assumptions and speculation are

13 the three fabricated circuit designs which Bender has concocted.  (*See* Schmid Decl., Ex. J.)   In

14 Bender's 2nd ICs, Bender based his allegations regarding infringement of claim 35 on a circuit

15 diagram that he and his counsel cobbled together by using a computer graphics program to take

16 two separate Maxim block diagrams, plus a number of elements not present in any Maxim

17 diagram, to create a completely new circuit.[2]  (Schmid Decl., Ex. A at A12.)  Bender offered no

18 basis for his misrepresentation of the Maxim circuit diagrams.  Bender pointed to no verbal

19 description of such a combination in any Maxim literature, nor to an analysis of an actual Maxim

20 product.  (*See id.*)  Nonetheless, after inventing his non-existent circuit, he boldly asserted that

21 "Maxim's voltage feedback amplifiers ***will*** look as follows," and that "Maxim ***builds*** the

22 amplifiers in this way."  (*Id.* (emphasis added).)

23         Next, in Bender's opposition to Maxim's previous motion to strike, Bender presented a

24 completely different fabrication resulting in his own imagined arrangement of the same two

25 Maxim amplifiers as his basis for alleging infringement of claim 35.  (Docket No. 50-1 at 19.)

26 Bender admitted that his fictitious circuit was not based on information about any accused Maxim

27         [2] The fabricated nature of Bender's diagram is evident by the fact that one half of his
   drawing has an inverted label of Maxim's name and product number.  (Schmid Decl., Ex. A at
28 A12.)

1  products. Instead, Bender stated that his new creation was "based directly on the information set

2  forth *in the claim charts*," that is, he fabricated a circuit specifically to meet the limitations in

3  claim 35 of Bender's patent. (Docket No. 50 at 1 (emphasis added).) Bender gave no

4  explanation for why he created a new falsified circuit, and never described how any of Maxim's

5  datasheets mandated his imaginary circuit, nor any other basis whatsoever for asserting that any

6  Maxim accused product is actually connected in this particular way by Maxim or any third party.

7  Despite the fact that Maxim pointed out Bender's circuit fabrication in a Court filing

8  (Docket No. 52 at 3), Bender included a third version of his fictitious circuit with his 3rd ICs (*see*

9  Schmid Decl., Ex. C at C10). Bender offered no basis in any Maxim literature for his circuit, and

10  no reason for the change in his make-believe circuit. In fact, Bender tries to pretend that his first

11  two drawings don't exist. (*See id.*) Bender's conduct of fabricating imaginary circuits that meet

12  the limitations of the claims, then creating claim charts based on these fictitious circuits is a

13  ludicrous attempt at complying with the Patent Local Rules and this Court's Order.

14  
15  
            **2.    Bender Violated This Court's Order By Circling Portions Of A High-Level Datasheet.**

16  The Court held that Bender cannot comply with his obligation to identify the location of

17  the elements of his claims by circling portions of a high-level datasheet. (Docket No. 54 at

18  3:25-4:1.) In Bender's 3rd ICs he repeatedly violates this order by circling various portions of a

19  single Maxim high-level datasheet. Bender used this improper approach with the "first input

20  buffer," "pair of opposing current mirrors," "load resistor," and "third output buffer" elements of

21  claim 8 and the "first and second input buffer," "first current rail," "load resistor means," "first

22  and second pair of opposing current mirrors," "first and second output buffer," and "feedback

23  network means" elements of claim 35. (Schmid Decl., Ex. C at C6-C9 and C11-C15.)

24  Amazingly, Bender admits that he has done exactly what the Court ordered him not to do.

25  Bender states that he chose to focus the claim charts at the level of "individual amplifiers," rather

26  than at the component level at which his claims are written, because that is how Maxim's

27  datasheets show the information. (*Id.* at C4.) However, the Court did not order Bender to

28  maximize the information he could get from the datasheets—it ordered him not to base his

1   contentions on these datasheets in the first place.  Bender violated this Court's order by basing his

2   approach on the very source this Court ruled was unacceptable.

3           **3.      Bender Violated This Court's Order By Stating That Any Electrical
                    Engineer Would Understand The Infringement Contentions.**

4

5           This Court instructed Bender not to try to shift the burden to Maxim by "[s]imply stating

6   that any electrical engineer would understand the infringement contentions."  (Docket No. 54 at

7   4:8-12.)  Bender's 3rd ICs directly contravene this instruction by asserting that "an analog

8   electronics engineer ordinarily skilled in the art would understand the types of amplifier described

9   below."  (Schmid Decl., Ex. C at C3.)

10          In short, Bender and his attorney have served infringement contentions that specifically

11  and intentionally violate the Court's orders regarding specificity in numerous ways.  This conduct

12  was done knowing that Bender's own expert had already testified that his argument and

13  assumptions were false.  There is simply no excuse for his conduct.

14          **B.      Bender Violated This Court's Order By Failing To Place Each Of The
                    Accused Products Into A Representative Category.**

15

16          Bender violated the Court's order by failing to place each of the Maxim accused products

17  into a logically representative category.  The Court expressly found that Bender's 2nd ICs were

18  insufficient because "fewer than 50 [accused products] are listed on the representative claim

19  charts," and directed Bender to "place all of the accused products into a representative category."

20  (Docket No. 54 at 4:19-21.)  Bender has not complied with this directive.  Instead, Bender simply

21  reduced the number of accused products associated with at least one claim chart from fifty to just

22  nine, MAX4180-4187 and MAX9867.  (*Compare* Schmid Decl., Ex. A at A10, A14, A18, A22,

23  A27, A32, A36, A40, A44 *with* Schmid Decl., Ex. C at C5, C10.)  Bender offers no justification

24  for his assertion that his charts are "representative" for the products he associates with them.  To

25  the contrary, Bender admits that, for claim 35, the eight products he lists as example products, are

26  not, by themselves, infringing.  (*See* Schmid Decl., Ex. C at C10.)  Instead, Bender argues that

27  these products would be infringing if placed in a fanciful arrangement that he created, without

28  identifying a single customer that has arranged them in that way.  Furthermore, Bender has done

-7-                    MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                       CASE NO. C09-01152 SI

1   nothing to shorten his long list of accused products—the vast majority of which he made

2   absolutely no effort to even associate with a claim chart.

3       **C.    Bender Has Violated This Court's Order By Failing To Identify The Alleged
            Elements Of Indirect Infringement.**

4

5       The Court ordered Bender to provide specific details relating to each of the elements of

6   indirect infringement.  The Court required Bender to:

7       • "specify any third party," alleged to directly infringe,

8       • "describe any acts committed by [that] third party that would suggest direct

9           infringement," and

10      • set forth "a description of the acts of the alleged indirect infringer that contribute

11          to or are inducing that direct infringement."

12  (Docket No. 54 at 4:24-5:4.)  Bender has provided Maxim none of the information ordered by the

13  Court.

14      Bender has never identified a single third party alleged to directly infringe.  Instead,

15  Bender attempts to shift his duty of investigation to Maxim, identifying "every customer who

16  uses an amplifier purchased from Maxim."  (Schmid Decl., Ex. C at C4.)  Such an identification

17  is necessarily over broad, as Bender has never even accused a large number of Maxim's

18  amplifiers of infringement.  Nor does Bender adequately describe the acts of the third parties that

19  constitute direct infringement.  Bender only states that Maxim's customers infringe by "the

20  addition of supporting circuitry," without providing any details regarding this hypothetical

21  additional circuitry.  (*Id.*)  In addition, as described above, Bender's own, changing, made-up

22  circuit diagrams demonstrate that he has no knowledge as to how any of Maxim's customers are

23  actually using the accused products.  (*See* Schmid Decl., Ex. J.)  Finally, Bender never describes

24  which Maxim acts Bender believes contribute to or induce the direct infringement.  He only

25  mentions that Maxim "teaches, instructs, and explains in its datasheets how to add feedback as

26  well as a load network."  (Schmid Decl., Ex. C at C4.)  Which specific datasheets is Bender

27  referring to?  What "feedback" and "load network" additions is Bender referring to?  What

28

MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                              CASE NO. C09-01152 SI

1   specific statements does Bender believe teach these additions?  Bender has failed to comply with

2   any of the three requirements ordered by the Court regarding allegations of indirect infringement.

3   **D.    Dismissing This Action Is The Proper Remedy For Bender's Violation Of**
         **This Court's Orders.**

4

5       Bender's flagrant and intentional refusal to abide by this Court's Order justifies ending

6   this litigation.  The Federal Rules of Civil Procedure direct that "[i]f a party . . . fails to obey an

7   order to provide or permit discovery . . . the court where the action is pending may issue further

8   just orders [which] may include . . . dismissing the action or proceeding in whole or in part."  Fed.

9   R. Civ. P. 37(b)(2)(A).  Both the Ninth Circuit and the Federal Circuit have affirmed Rule 37

10  terminating sanctions under Ninth Circuit law for failure to comply with court orders.  *Stars'*

11  *Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521 (9th Cir. 1997); *Refac Int'l, Ltd.*

12  *v. Hitachi, Ltd.*, 921 F.2d 1247 (Fed. Cir. 1990).  In addition "district courts also have inherent

13  authority to impose sanctions against parties, including entry of a default judgment, for 'litigation

14  misconduct' or 'willful disobedience' of a court order."  *Elecs. for Imaging, Inc., v. Photoscript*

15  *Group Ltd.*, Case No. C98-2759 SI (MED), 1999 U.S. Dist. LEXIS 7395, at *8 (N.D. Cal. May

16  11, 1999) (*see, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991); *Link v. Wabash R.R.*

17  *Co.*, 370 U.S. 626 (1962)).  "Finally, Civ. L.R. 1-4 expressly proves that 'failure of counsel or a

18  party to comply with any provision of these local rules or the Federal Rules of Civil Procedure . .

19  . shall be a ground for imposition by the Court of such sanctions as authorized by statute or rule

20  as may be appropriate.'"  *Elecs. for Imaging*, 1999 U.S. Dist. LEXIS 7395, at *8.

21      "Before the Court can enter a default judgment against a defendant for violating an order,

22  the Court must consider" five factors set out by the Ninth Circuit.  *Netsuite, Inc., v. CIPC*

23  *Worldwide Holdings Corp.*, No. C 07-5235 SI, 2008 U.S. Dist. LEXIS 79446, at *6 (N.D. Cal.

24  July 21, 2008).  These factors are "(1) the public's interest in expeditious resolution of litigation;

25  (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions;

26  (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less

27  drastic sanctions."  *Id.* at *6-7 (citing *Hydge & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir.

28  1994)).  "The first two of these factors favor the imposition of sanctions in most cases, while the

-9-   MAXIM'S MOTION FOR SANCTION OF DISMISSAL
       CASE NO. C09-01152 SI

1    fourth cuts against a default or dismissal sanction.  Thus the key factors are prejudice and

2    availability of lesser sanctions."  *Id.* at *7 (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th

3    Cir. 1990.)

4         The Federal Circuit's *Refac* decision directly supports terminating Bender's case.  In

5    *Refac*, the defendant had moved to compel interrogatory responses related to patent infringement.

6    *Refac*, 921 F.2d at 1250-51.  As a result, the district court ordered the plaintiff to "respond to

7    pending discovery specifically stating (1) which products are infringing of each defendant;

8    (2) which elements of each claim are present in the accused devices and (3) which elements of

9    each claim are present in each accused device under the doctrine of equivalents."  *Id.* at 1251.

10   When plaintiff's amended interrogatory responses "did not identify the elements of any specific

11   product corresponding with the patent claim elements, made no reference to literal infringement

12   or infringement by equivalents, and provided no analysis whatever respecting the '355 or '783

13   patents," the Central District of California District Court entered terminating sanctions.  *Id.* at

14   1251-53.  The Federal Circuit affirmed these terminating sanctions because plaintiff's

15   supplemental interrogatory answer "failed to identify the elements of specific products

16   corresponding with patent claim elements," and "was based on the admittedly erroneous assertion

17   that *any* LCD infringed the '049 patent."  *Id.* at 1254 (emphasis in original).  The court found that

18   the "harm to the present defendants in being rendered unable to prepare their defense" was

19   "egregious," and was highlighted by plaintiff's "inability to spell out a proper basis for charging

20   infringement more than a year after bringing suit."  *Id.* at 1254-55.  The court further found that

21   "any lesser sanction would have been insufficient in light of Refac's conduct."  *Id.* at 1255.

22   Finally, the court emphasized that prior warning of dismissal was unnecessary because "Rule 37

23   itself provides for dismissal and default judgment for failure to obey a discovery order.

24   Presumably counsel was aware of the order and could hardly have been surprised."  *Id.* at

25   1255-56.

26        Just as in *Refac*, Bender's repeated, knowing refusal to abide by this Court's order, not to

27   mention the orders in numerous parallel cases, similarly justifies dismissal.  Just like the plaintiff

28   in *Refac*, Bender has "failed to identify the elements of specific products corresponding with

-10-                    MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                        CASE NO. C09-01152 SI

patent claim elements . . . more than a year after bringing suit." *Id.* at 1254-55.  The claim

elements of Bender's patent are directed to structures such as "current rails" and "current

mirrors," but Bender only identifies "individual amplifiers" of products, not the claimed elements.

(*See* Schmid Decl., Ex. C at C3-C6.)   Just as Refac's belief that defendant's LCD's infringed

"was based on the admittedly erroneous assertion that *any* LCD infringed the '049 patent," *Refac*,

921 F.2d at 1254, so too has Bender stated that Maxim must infringe because all high-speed

analog amplifiers must contain the elements of his claims (*see* Docket No. 50 at 3).  Just as in

*Refac*, Bender's assumption that all high speed analog amplifiers infringe his patent is knowingly

erroneous as his own expert has testified that his assumption is false.  (*See* Schmid Decl., Ex. I at

27:13-24; 79:17-24.)

Bender's misconduct is even more egregious than the plaintiff in *Refac*, as Bender has

already been given two chances to correct his deficiencies, and multiple warnings that his

approach to infringement contentions did not comply with Patent L.R. 3-1.  This Court has

indicated that it may hold Bender responsible for adhering to decisions from Bender's parallel

cases that issued before Bender provided contentions in question.  (*See* Docket No. 54 at 5.)

Bender asked to delay the deadline for his 3rd ICs by a week just shortly after an oral ruling in the

*Bender v. Advanced Micro Devices, Inc.*, case.  When Maxim confirmed the delay, Maxim

attached the *AMD* written order, and emphasized that Maxim expected Bender's 3rd ICs in this

case to be informed by that decision.  (Schmid Decl., Ex. B.)  In that decision, Bender was

ordered to "identify, e.g., where the buffers, rails, and mirrors are located specifically."  (Schmid

Decl., Ex. K.)  Further, the *AMD* order is only the most recent in what is now a long line of

decisions that Bender's various infringement contentions are inadequate.  *See, e.g., Bender v.

Broadcom Corp.*, No. C 09-01147 MHP, 2010 U.S. Dist. LEXIS 28336 (N.D. Cal. Mar. 22,

2010); *Bender v. Infineon Technologies North America Corp.*, No. C09-02112 JW (HRL), 2010

U.S. Dist. LEXIS 24096 (N.D. Cal. Mar, 16, 2010) (designated "not for citation"); *Bender v.

Micrel Inc.*, No. C 09-01144 SI, 2010 U.S. Dist. LEXIS 18134 (N.D. Cal. 2010).

If this case is not dismissed, there is substantial risk of prejudice to Maxim.  Proceeding

without amendment would "force[ Maxim] to produce proprietary schematics unnecessarily."

MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                                        CASE NO. C09-01152 SI

1  (*See* Docket No. 54 at 4-6.).  It would further force Maxim to continue the expense and

2  uncertainty of defending a large and nebulous lawsuit, and would severely hamper Maxim's

3  ability to prepare its defense.  *See Refac* at 1254-55.  This Court should not force Maxim to pay

4  for the investigation that Bender should have done himself.

5       Sanctions less drastic than dismissal are not available here.  Bender has already been

6  given two chances to amend his contentions in this case after he failed to comply with the local

7  rules.  Yet, to date, not a single one of Bender's infringement contentions in any of his cases has

8  been found sufficient.  Despite being spoon-fed the methods to escape such sanctions (such as

9  purchasing products and analyzing them through reverse engineering), Bender has steadfastly and

10  knowingly refused to lift a finger to simply purchase a single product or investigate how one is

11  actually built.  Bender's own conduct demonstrates that allowing Bender another chance to

12  amend would be futile.

13  **IV.   CONCLUSION**

14       For the reasons stated above, Defendant respectfully requests that the Court grant

15  Maxim's request for terminating sanctions under Rule 37(b)(2)(A) of the Federal Rules of Civil

16  Procedure, the Court's inherent authority, and Civil L.R. 1-4.

17

18  Dated:  May 21, 2010                    Respectfully submitted,

19                                          Jones Day

20

21                                          By:  ___/s/ Gregory L. Lippetz_____
                                                 Gregory L. Lippetz
22                                               State Bar No. 154228
                                                 JONES DAY
23                                               1755 Embarcadero Road
                                                 Palo Alto, CA  94303
24                                               Telephone:      650-739-3939
                                                 Facsimile:      650-739-3900
25
                                            Attorneys for Defendant
26                                          MAXIM INTEGRATED PRODUCTS, INC.

27

28

MAXIM'S MOTION FOR SANCTION OF DISMISSAL
                                                    CASE NO. C09-01152 SI