Gregory L. Lippetz (State Bar No. 154228)
glippetz@jonesday.com
Cora L. Schmid (State Bar No. 237267)
cschmid@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone:     650-739-3939
Facsimile:     650-739-3900

Attorneys for Defendant
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Gregory Bender,<br><br>        Plaintiff,<br><br>    v.<br><br>Maxim Integrated Products, Inc.,<br><br>        Defendant. | Case No. C 09-01152 SI<br><br>**MAXIM INTEGRATED PRODUCTS, INC.'S REPLY TO OPPOSITION TO MOTION FOR SANCTION OF DISMISSAL**<br><br>Date:    July 30, 2010<br>Time:   9:00 a.m.<br>Place:  Ctrm. 10, 19th Floor<br>Judge:  Hon. Susan Illston |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 1

    A.   Bender Has Failed To Prove That He Complied With This Court's
       March 22, 2010 Order ................................................................................... 1

        1.   Bender Cites No Authority To Excuse Him From Identifying The Location
           Of The Claim Elements As Ordered By The Court ...................................... 1

        2.   Bender Cannot Demonstrate That 3rd ICs Identify The Location Of The
           Claim Elements ............................................................................................. 4

        3.   Bender Fails to Explain His Violation of the Court's Order That He Justify
           His Placement of Each Accused Product Into A Representative Category .. 8

        4.   Bender Has Failed To Set Forth The Required Elements Of Indirect
           Infringement .................................................................................................. 9

    B.   The Proper Remedy For Bender's Conduct Is Dismissal ............................. 9

III. CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bender v. Advanced Micro Devices, Inc.*,
   No. C-09-1149 MMC (EMC) (N.D. Cal. Apr. 22, 2010) .....................................11

*Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC,
   2010 U.S. Dist. LEXIS 11539 (N.D. Cal. Feb. 1, 2010) .....................................12

*Bender v. Broadcom Corp.*,
   No. C 09-01147 MHP, 2010 U.S. Dist. LEXIS 28336 (N.D. Cal. Mar. 23, 2010) ...........11

*Bender v. Freescale Semiconductor, Inc.*,
   No. C 09-1156 PHJ (MEJ), 2010 WL 1689465 (N.D. Cal. Apr. 26, 2010); .....................11

*Bender v. Infineon Technologies North America Corp.*,
   No. C09-02112 JW (HRL), 2010 U.S. Dist. LEXIS 24096 (N.D. Cal. Mar, 16, 2010).....11

*Bender v. Infineon Technologies North America Corp.*,
   No. C09-02112 JW (HRL), 2010 U.S. Dist. LEXIS 24193
   (N.D. Cal. Mar, 16, 2010)..................................................................................11

*Bender v. International Business Machines Corp.*,
   Case No. C 09-01249 RMW (RS), 2009 U.S. Dist. LEXIS 126510
   (N.D. Cal. Nov. 13, 2010).................................................................................12

*Bender v. Intersil Corp.*,
   No. C 09-01155 CW, 2009 U.S. Dist. LEXIS 126515 (N.D. Cal. Oct. 29, 2009) .............12

*Bender v. Maxim*, No. C 09-01152 SI,
   2010 U.S. Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010);.................................................11

*Bender v. Micrel Inc.*, No. C 09-01144 SI,
   2010 U.S. Dist. LEXIS 18134 (N.D. Cal. Feb. 6, 2010) .....................................12

*Collins v. City of Harker Heights*,
   503 U.S. 115, 125 (1992)..................................................................................3

*FusionArc, Inc. v. Solidus Networks, Inc.*,
   No. C 06-06760 RMW (RS), 2007 U.S. Dist. LEXIS 29870 at *8
   (N.D. Cal. Apr. 5, 2007) ..................................................................................2

*Intamin, Ltd. v. Magnetar Techs., Corp.*,
   483 F.3d 1328 (Fed. Cir. 2007) ........................................................................2

*Network Caching Tech., LLC v. Novell, Inc.*,
   No. C-01-2079 VRW, 2003 U.S. Dist. LEXIS 9881, at *14
   (N.D. Cal. Mar. 21, 2003)..................................................................2, 10, 11

*O2 Micro Int'l Ltd., v. Monolithic Power Sys., Inc*,
   467 F.3d 1355, 1366, 1369-70 (N.D. Cal. 2006).............................................................3

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004) ........................................................................2

*Refac Int'l, Ltd. v. Hitachi, Ltd.*,
    921 F.2d 1247 (Fed. Cir. 1990) ....................................................................9, 10

*Regents of Univ. of Mich. v. Ewing*,
    474 U.S. 214, 225-226 (1985) ..........................................................................3

*Renesas Tech. Corp. v. Nanya Tech. Corp.*,
    No. C03-05709JFHRL, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004)..............................3

*STMicroelectronics, Inc. v. Motorola, Inc.*,
    308 F. Supp. 2d 754, 756 (E.D. Tex. 2004)..........................................................2

## I.   INTRODUCTION

Bender's Opposition to Maxim's motion completely fails to address most of the violations of this Court's March 22, 2010 order.  Instead, Bender's opposition is essentially a motion for reconsideration of that order.  The time for reconsideration has passed.

Bender's case should be dismissed as a sanction for violating this Court's order.  Bender fails to explain how his 2nd Amended Infringement Contentions (his "3rd ICs") satisfy this Court's order.  Specifically, Bender fails to show where in his contentions he has identified the location of each element of each asserted claim.  Bender continues to violate the specific instructions of this Court by "assuming" the presence of elements, circling portions of high-level data sheets, and arguing that "any engineer" could find the proverbial needles in the haystacks of accused products.  Bender's attempt to rely on expert declarations is completely nullified by the directly contrary testimony provided by these experts at their depositions.  Bender fails to provide the Court-ordered justification for his "grouping" of products, or the required basis for his claims of indirect infringement.

Having clearly violated a Court order, there is ample authority for this Court to end this charade of a case.  Bender made a conscious choice not to perform the investigation required by the law.  It is now time to stop the prejudice to Maxim from Bender's conduct, and dismiss this case in its entirety.

## II.   ARGUMENT

### A.   Bender Has Failed To Prove That He Complied With This Court's March 22, 2010 Order.

#### 1.   Bender Cites No Authority To Excuse Him From Identifying The Location Of The Claim Elements As Ordered By The Court.

Bender continues to misinterpret the case law discussing reverse engineering as providing a "get out of jail free" card to lazy plaintiffs who refuse to investigate the functionality of products they accuse of infringement.  Bender argues that he should be excused from complying with this Court's order because "reverse engineering is not required."  (Docket No. 60 at 9:20-21.)  While the law does not absolutely require reverse engineering in all cases, a patentee's

1    unwillingness to reverse engineer in appropriate circumstances does not excuse insufficient

2    contentions. Bender's reliance on *Intamin, Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328 (Fed.

3    Cir. 2007), is misplaced. The Court in *Intamin* held that a plaintiff may be excused from

4    purchasing and analyzing a product under Rule 11 where "the technology present[s] the patentee

5    with unreasonable obstacles to any effort to obtain a sample of [the accused] amusement ride

6    brake system, let alone the difficulty of opening the casing." *Id.* at 1338. Here, Maxim's

7    products are readily available, and Bender has offered no evidence that he would face any

8    obstacles obtaining the accused Maxim products. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360

9    F.3d 1295 (Fed. Cir. 2004), is also unhelpful to Bender. In *Q-Pharma*, the Federal Circuit found

10   that a patentee was excused from reverse engineering where the identification of all of the

11   elements of the asserted claims could be ascertained from the product label without reverse

12   engineering. *Id.* at 1300-02. Bender does not allege, nor is it the case, that the elements of

13   Bender's claims can be ascertained from the available Maxim product literature.

14       Bender's reliance on cases in which courts found different sets of contentions relating to

15   different claims compliant with Patent L.R. 3-1 is unhelpful here. In none of the cases cited by

16   Bender did the court address whether a plaintiff is excused from serving compliant infringement

17   contentions simply because the plaintiff does not want to reverse engineer. *FusionArc, Inc. v.*

18   *Solidus Networks, Inc.*, No. C 06-06760 RMW (RS), 2007 U.S. Dist. LEXIS 29870 at *8 (N.D.

19   Cal. Apr. 5, 2007) (reverse engineering was not required where "it does not appear that [the

20   patentee] has failed to 'link' its contentions regarding Solidus's accused systems to the claims of

21   the patent"); *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 U.S. Dist.

22   LEXIS 9881, at *14 (N.D. Cal. Mar. 21, 2003) (finding a patentee's revised contentions to be in

23   compliance with Patent L.R. 3-1 where the contentions in question "map[ed] specific elements of

24   defendants' allegedly infringing products onto [patentee's] claim construction");

25   *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 756 (E.D. Tex. 2004) (finding

26   under the specific facts of the case that additional analysis, such as reverse engineering, was

27   unnecessary because "it appears that Motorola has met the Patent Rule 3-1 disclosure standard").

28   Indeed, as Judge Lloyd instructed Bender last May in the parallel *Bender v. Infineon* case,

MAXIM'S REPLY TO OPP'N TO MOT. FOR
SANCTION OF DISMISSAL
CASE NO. C 09-01152 SI

"reverse engineering is not always necessary if there's sufficient available information to produce workmanlike infringement contentions without it. That's not to say that the Plaintiff never has to do reverse engineering to formulate adequate infringement contentions." (Ex. A, 5/11/10 *Bender v. Infineon* Hearing Tr. at 4:18-24.)

Bender's reliance on *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. C03-05709JFHRL, 2004 WL 2600466 (N.D. Cal. Nov. 10, 2004) fully supports Maxim's motion. The court in *Renesas* specifically set forth the steps that Bender could have taken to comply with the Patent Local Rules – purchase and analyze the accused Maxim products. *See id. at* *3 (explaining that plaintiff reverse engineered three products before grouping similar accused products).

Bender's argument that requiring reverse engineering would obviate the need for discovery, placing the Patent Local Rules in contravention with the Federal Rules, is simply untrue. The results of reverse engineering are not necessarily "proof" of infringement, but rather a representation of the circuitry within a chip. After using reverse engineering to overcome the hurdle of providing notice of the location of each claim element, discovery of schematics, and further analysis, would still be required to prove infringement. Bender's reliance on *O2 Micro* does not change the analysis. (Docket No. 60 at 17-18). *O2 Micro* is not concerned with reverse engineering or the detail required for infringement contentions. To the contrary, the Federal Circuit in *O2 Micro* **affirmed** the Northern District's ability to impose sanctions for failing to comply with the Patent Local Rules, recognizing the usefulness of such rules in governing discovery. *See O2 Micro Int'l Ltd., v. Monolithic Power Sys., Inc,* 467 F.3d 1355, 1366, 1369-70 (N.D. Cal. 2006).

Bender cavalierly asserts that it would be a violation of his substantive due process rights if he were required to reverse engineer a product to comply with the Patent Local Rules. (*See* Docket No. 60 at 18.) Bender cites no authority for this proposition. To the contrary, the Supreme Court has specifically noted that, "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992) (*citing Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225-

1   226 (1985)).  There is simply no basis for Bender's "due process" challenge to the Patent Local

2   Rules.

3         Finally, Bender argues, unpersuasively, that he should be relieved of his obligation to

4   provide specific contentions because of the absence of a specific reverse engineering requirement

5   in the Patent Local Rules, and the cost of reverse engineering.  (Docket No. 60 at 16.)  Patent

6   L.R. 3-1(c) requires a patentee to "identify[] specifically where each limitation of each asserted

7   claim is found within each Accused Instrumentality."  As this Court has found, Bender's

8   contentions have not done this.  It is incumbent on the plaintiff to satisfy this requirement, even if

9   it requires spending money on an investigation.  Bender's own expert has indicated that Bender

10  could get the information he needs through reverse engineering.  (Ex. B, Pedrotti Dep. at

11  47:5-48:2.)  Bender has offered no evidence in other cases, or in any of his parallel cases in this

12  jurisdiction, that he is unable to reverse engineer.  Bender's sole proof of costs is inadmissible

13  hearsay evidence in another case that reverse engineering one particularly complex chip could

14  cost over a million dollars, which has been directly challenged by the defendant in one of the

15  cases.  (*Compare* Ex. A, *Bender v. Infineon* Hearing Tr. at 12:20-24 *and* Ex. C, Kuhn Decl. at ¶ 6

16  *with* Ex. D, Jeruss Decl. at ¶ 1-6.)  In this case, two admissible, expert declarations have

17  submitted by Maxim, and stand unrebutted by Bender.  (Docket Nos. 26 and 27, attached as Exs.

18  E and F respectively.)  These declarations show that Bender could reverse engineer a chip for

19  approximately $20,000.  (Ex. E, Garong Decl. at ¶ 23-27; Ex. F, Garong Supplemental Decl. at

20  ¶ 3.)

21              **2.      Bender Cannot Demonstrate That 3rd ICs Identify The Location Of**
                          **The Claim Elements.**
22

23        Bender makes no legitimate showing that he complied with this Court's order that he

24  serve infringement contentions that "specify the location of each [claimed] element within the

25  accused product."  (*See* Docket No. 54 at 3:18-20, 5:13-14.)  As discussed below, all of Bender's

26  arguments are based entirely on opinions from two experts, each of whom has provided

27  deposition testimony that directly contradicts Bender's position.

28        As a general matter, each of Bender's experts has testified, under oath, that the

infringement contentions do not identify the specific location of each element of each asserted claim. Bender's declarant Dr. Sergio Franco testified that Bender's 3rd ICs illustrate the locations of "only some, not all" of the claim elements. (Ex. G, Franco Dep. at 180:10-20.)[1]  Dr. Franco further testified that the "level of detail" of Claim 35 is not present in Bender's 3rd ICs. (*Id.*) He testified repeatedly that he could not tell if any Maxim product has all of the elements of claim 35 without seeing circuit-level schematics of the product. (*Id.* at 147:22-148:1; 157:12-158:4; 166:25-167:8.)  He also admitted that he cannot identify the locations of the elements of either of the asserted claims from the data sheets Bender used to create Bender's 3rd ICs. (*Id.* Franco Dep. at 104:20-106:20: 159:3-10.)  Bender's other declarant, Dr. Kenneth Pedtrotti, also admitted in his declaration that "the incomplete nature of the simplified block diagrams" hampered his ability to identify the locations of the claimed elements. (*See* Docket No. 62 at 4:8-9.)  In other words, both of Bender's experts have recognized that Maxim's published datasheets do not contain the same level of detail as Bender's claims.  Yet it is clear that the Maxim datasheets are the only source of information Bender has analyzed, or is willing to analyze, for his contentions.

Instead of identifying the location of each claim element as ordered, Bender's 3rd ICs are based solely on assumptions, circled portions of high-level datasheets, and statements about "what any electrical engineer would understand."  Bender does not deny that the Court's order directly prohibited Bender's reliance on these bases. (*Compare* Docket No. 57 at 4:2-7 *with* Docket No. 60.)  Furthermore, Bender fails to refute that has violated each of these three prohibitions.

Bender's opposition makes clear that he continues to rely on assumptions regarding the presence of required elements.[2]  For example, Bender completely ignores Maxim's challenge to

---

[1]  The deposition of Dr. Franco demonstrated that his support for Bender's legal theory's are suspect.  He testified that in 2007, he refused to consult regarding Bender's patent and wrote that "I'm finding it very difficult to understand the fine points of the patent, and to come up with a reliable assessment of what the aims are.  I am just totally unfamiliar with the patent terrain, and prefer not to commit myself to something that is above my judgmental abilities."  (Ex. G, Franco Dep.. at 195:8-13.)  He further testified that the only difference to his understanding of patents since he wrote that e-mail is the "tutelage from David and Steven Kuhn," Bender's attorney and the son of Bender's attorney.  (*Id.* at 197:4-5.)

[2]  Bender's argument that "[t]he presence [of current rails and voltage supply rails] is

1   his attempts to identify the "location" of an element that has been "obfuscated" behind a dotted

2   line in a datasheet diagram. (*Compare* Docket No. 57 at 4:24-5:4 *with* Docket No. 60.)  For

3   example, one of these "obfuscated" claim elements is the "second input stage" element of

4   claim 8.  (See Docket No. 57 at 5:2-4.)  This element is the primary difference between asserted

5   claim 8 and the cancelled claim 1 of the '188 patent. (*Compare* Docket No. 4-1 at 15:49-16:9

6   *with* Docket No. 4-1 at 16:34-64.)  Claim 1 was canceled by the United States Patent and

7   Trademark Office ("USPTO") over the prior art on reexamination.  (*See* Ex. H, Excerpt of

8   USPTO Office Communication at 4.)  In other words, an accused product that lacks this "second

9   input stage" element not only does not infringe claim 8, it may well be using the very prior art

10  techniques that invalidated claim 1 of the '188 patent.  Similarly, Bender fails to explain how any

11  of his other assumptions of the presence of other elements behind a dotted line comply with this

12  Court's order, including the "first and second pair of opposing current mirrors" element of

13  claim 35 and the "pair of opposing current mirrors" element of claim 8. (*Compare* Docket No. 57

14  at 4:24-5:4 *with* Docket No. 60.)

15         Bender's opposition completely ignores the fictitious Maxim circuits he concocted

16  entirely out of assumptions. (*Compare* Docket No. 57 at 5:12-6:13 *with* Docket No. 60.)

17  Bender's expert Dr. Franco testified extensively that this circuit is a made-up circuit based on

18  assumptions.  Specifically, Dr. Franco testified that "[t]his circuit was generated making a

19  supposition."  (Ex. G, Franco Decl. at 181:3-4.)  He described that he had worked with Bender's

20  attorney David Kuhn, and Mr. Kuhn's son, Stephen Kuhn, to create this circuit and that "we

21  *surmised* that the circuit *might* be like this." (*Id.* at 181:12-20 (emphasis added).)  Dr. Franco

22  further confirmed that he cannot identify any actual Maxim product that contains the circuitry of

23  his fabricated drawing. (*Id.* at 177:10-16.)  Indeed, Dr. Franco testified that Bender's first

24  imaginary circuit would not even operate as required by Claim 35. (*Id.* 172:19-21.)

25

26  (continued...)

27  based not upon an assumption but upon the laws of physics," is misguided. (*See* Docket No. 60 at
    7:1-3.)  The Court did not order Bender to justify his belief that certain elements were present, it

28  ordered him to "actually specify the location of each element within the accused product."
    (Docket No. 54 at 3:19-20.)

1    The expert declarations discussing the "necessity" of certain elements were completely

2    undermined by the deposition testimony of these experts.  Dr. Franco's declaration stated that

3    performance characteristics and general descriptions in the MAX4180 product datasheet make it

4    "***all but an absolute certainty*** that the elements of Claim 8 are present in MAX4180."  (Docket

5    No. 61 at 6:12-14; 7:20-24.)  However, Dr. Franco later testified that he "cannot say" from the

6    MAX4180 datasheet whether at least one element of claim 8 is in fact present.  (Ex. G, Franco

7    Dep. at 123:25-124:18.)  Dr. Pedrotti stated in his declaration that "I believe that there is a very

8    strong likelihood that each and every element of Claim 8 is present in such so-called Maxim

9    current feedback amplifiers."  However, Dr. Pedrotti gives no bases for this statement, nor

10   concludes that the elements are actually present.  (Docket No. 62 at 3:14-18.)  He later argues that

11   "there are, to my knowledge, no ways to make a high-gain current feedback amplifer such as the

12   product MAX4180 without Buffered Transconductance Amplifer architectures."  (*Id.* at 6:1-5.)

13   However a conclusion that a product uses a "Buffed Transconductance Amplifer" architecture

14   says nothing about whether the elements of Claim 8 are present.  Bender's entire '188 patent is

15   titled to "Buffered Transconductance Amplifiers" (Docket No. 4-1.)  Since the USPTO rejected

16   multiple other "Buffered Transconductance Amplifier" claims of this patent on reexamination,

17   such an amplifier could just as easily be prior art.  (*See* Ex. H, Excerpt of USPTO Office

18   Communication at 4.)

19   Bender failed to adequately address his violation of the Court's order by circling portions

20   of a high-level datasheet.  Bender's only response is to argue that, in his 3rd ICs, he circled

21   different portions of the datasheet.  (*See* Docket No. 60 at 7:10-15.)  But the Court did not order

22   Bender to circle different parts of the datasheets, it ordered him not to rely upon circling parts of

23   datasheets at all.  (*See* Docket No. 54 at 3:25-4:1.)

24   Finally, Bender fails to justify his continued reliance on Maxim's engineers doing his

25   work for him, in direct violation of the Court's order.  Bender's expert declarations continue to

26   opine regarding what "any" electrical engineer would be able to do.  Specifically, Bender's expert

27   Dr. Pedrotti declared that "I believe that any analog electrical engineer would, could, and should

28   be able to locate the amplifiers and understand the elements inside of the amplifiers based on the

information set forth in datasheets provided and to interpret the applicable underlying schematics." (Docket No. 62 at 3:4-8.) Similarly, Bender's expert Dr. Franco declared that "any competent analog electrical engineer knowledgeable in the analog electronics art would, could, and should be able to recognize and locate the analog amplifiers . . . referenced in the publicly-available so-called block diagrams," and that "looking at the schematic files therefore discern, interpret, comprehend, and understand the elements shown inside the amplifiers." (Docket No. 61 at 8:18-9:1.) Not only do such statements contravene this Court's order, they are also irrelevant. Dr. Franco testified that he cannot locate the claimed elements based on the claim charts provided by Bender. (Ex. G, Franco Dep. at 104:20-106:20; 159:3-10.) That is the standard set out in the Patent Local Rules and the Court's order. It is not relevant what "any" electrical engineer could or could not do with Maxim's highly proprietary information in his or her hands. There is simply no excuse for such a flagrant violation of a Court order.

### 3. Bender Fails to Explain His Violation of the Court's Order That He Justify His Placement of Each Accused Product Into A Representative Category.

Bender does not even argue that he "provided an adequate explanation of why the claim charts are representative of all of the accused products," as the Court ordered. (Docket No. 54 at 4:17-18.) Instead, Bender argues that because amplifier designs are reused for different products "that require [similar] performance characteristics," he is justified in accusing any Maxim products he wishes. (*See* Docket No. 60 at 8:9-14.) However, Bender's own expert Dr. Franco has testified that he does not have "any knowledge about which, if any, Maxim products would reuse the amplifier design from any other Maxim product." (Ex. G, Franco Dep. at 49:11-21; *see also id.* at 60:4-13.) Bender has reduced the number of accused products associated with at least one claim chart from fifty to just nine, MAX4180-4187 and MAX9867. (*Compare* Docket No. 58-1 at A10, A14, A18, A22, A27, A32, A36, A40, A44 *with* Docket No. 58-3 at C5, C10.) However, Bender offers no justification for his assertion that his charts are "representative" for the products he associates with them. To the contrary, Bender admits that, for claim 35, the eight products he lists as example products, are not, by themselves, infringing. (*See* Docket No. 58-3

at C10.)  Instead, Bender argues that these products would be infringing if placed in a fanciful arrangement that he created, without identifying a single customer that has arranged them in that way.  Furthermore, Bender has done nothing to shorten his long list of accused products—the vast majority of which he made absolutely no effort to even associate with a claim chart.

> **4.      Bender Has Failed To Set Forth The Required Elements Of Indirect Infringement.**

Bender's opposition does not correct or justify his failure to identify the elements of indirect infringement.  Instead, Bender focuses his opposition on arguing why he believes that Maxim may induce infringement.  But the Court did not order him to discuss his thought process.  Rather, the court ordered Bender to:

- "specify any third party," alleged to directly infringe,
- "describe any acts committed by [that] third party that would suggest direct infringement," and
- set forth "a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement."

(Docket No. 54 at 4:24-5:4.)  Bender has not provided this information, cited any authority that this information should not be required, or even requested another chance to provide this information.

> **B.      The Proper Remedy For Bender's Conduct Is Dismissal.**

Bender's opposition wholly fails to address the law Maxim cited supporting terminating sanctions for violation of a court order, the unavailability of lesser sanctions, and the prejudice to Maxim if the case continues.  Bender does not deny that terminating sanctions can be imposed for failure to comply with a court order.  Nor does he deny that the Federal Circuit granted such terminating sanctions under Ninth Circuit law in the highly analogous case of *Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247 (Fed. Cir. 1990).

Bender's only attempt to avoid the sanction of dismissal is the unpersuasive argument that, if the Court were to ignore Bender's violation of the its order, "[i]t is difficult to see how . . .

1   [producing documents] is unduly prejudicial to Maxim." (Docket No. 60 at 20:5-8.)  Yet

2   Bender's own expert, Dr. Sergio Franco addressed the proprietary nature of schematics at his

3   July 12, 2010 deposition:

> Q.  Sure.  Now outside of a legal setting, if a document were -- if a document were
>     released, what would be the effect on the company?
> A.  A document such as. . . ?  Can you give me an example?
> Q.  Let's say a fully detailed schematic for the MAX4180, for instance.
> A.  Well, the company would be subject to competition. The first fear of the company
>     would be that somebody else looks at that schematic and just duplicates it, second
>     sourcing or whatever; although second sourcing, if I understand it correctly, is based
>     on an agreement between two companies.  Right?
> Q.  Uh-huh.
> A.  So this will be a form of a legal second sourcing or maybe just -- maybe change the
>     design, make some schematic changes and essentially exploit the investment -- the
>     effort and investment made by Company
> A.  *So there are good reasons for Company A not to be wanting to disclose unless they
>     are forced to.*
> Q.  Okay.  So you would agree that schematics, in general, are highly proprietary
>     documents?
> A.  Over the years they become more and more so.

13  (Ex. G, Franco Dep. at 68:15-69:12 (emphasis added).)  To force Maxim to produce such

14  proprietary documents unnecessarily so that Bender can go on a fishing expedition would be

15  highly prejudicial to Maxim.[3]  Maxim would be further prejudiced by having to bear the expense

16  of complying with Bender's obligations for him simply because Bender refuses to incur the

17  expense himself.  Bender does not address the availability of lesser sanctions.  However, his

18  response on prejudice tacitly admits that there are none.  Bender has proposed only that his non-

19  compliance be ignored, and that the burden of Bender's infringement analysis in this case be

20  shifted to Maxim.  (*See* Docket No. 60 at 20:5-8.)  Under the standards articulated in *Refac Int'l,*

21  *Ltd. v. Hiachi, Ltd.*, 921 F.2d 1247 (Fed. Cir. 1990), this Court should grant Maxim's motion for

22  the sanction of dismissal.

23         Bender's sole legal authority opposing dismissal as a remedy for violation of a court order

24  is *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 U.S. Dist. LEXIS

---

[3] Maxim's reticence to produce schematics unnecessarily is particularly warranted in this
case.  Even though production would occur under a protective order, this current motion was
brought because Bender's counsel has already failed to comply with one order by this Court.
Further, Bender's counsel previously made reference in a public briefing to the contents of
schematics that were produced under a protective order in a different case.  (*See* Docket No. 52 at
3 n.3.)

1   9881 (N.D. Cal. Mar. 21, 2003).  (*See* Docket No. 60 at 19:15-20:2.)  However, *Network Caching*

2   based its denial of a motion for terminating sanctions on its finding that the ordered infringement

3   contentions **complied** with the court's order and the local rules.  *Network Caching*, 2003 U.S.

4   Dist. LEXIS 9881 at 12-13.  *Network Caching* does not address whether dismissal would have

5   been warranted if the patentee had failed to comply with the court's order, as Bender has done

6   here.  Because Bender was told on over ten occasions by seven different judges how to comply

7   with the Patent Local Rules prior to his service of his 3rd ICs on April 28, 2010, there is no

8   excuse for his failure to comply with this Court's order.[4]  Bender asserts that dismissal is not

9   appropriate because "until [the March 22, 2010] Order, Plaintiff did not know that the then

10  subject claim charts were not in compliance with the appropriate requirements."  (Docket No. 60

11  at 19:10-12.)  However, prior to the March 22, 2010 order, Bender had already received at least

12  six of the separate orders informing him that his similar infringement contentions in his parallel

13  cases in this district were inadequate.   Furthermore, Bender does deny that the Court's March 22,

14  2010 order gave specific guidance regarding what would and would not be acceptable in Bender's

15  3rd ICs.  Whether or not Bender was aware of this guidance before receiving the order is

16  irrelevant to his failure to comply with the order after he received it.[5]

17  _____

18  [4] *Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ (MEJ), 2010 WL 1689465
    (N.D. Cal. Apr. 26, 2010); *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC
    (EMC) (N.D. Cal. Apr. 22, 2010; *Bender v. Broadcom Corp.*, No. C 09-01147 MHP, 2010 U.S.

19  Dist. LEXIS 28336 (N.D. Cal. Mar. 23, 2010); *Bender v. Maxim*, No. C 09-01152 SI, 2010 U.S.
    Dist. LEXIS 32115 (N.D. Cal. Mar. 22, 2010); *Bender v. Infineon Technologies North America*

20  *Corp.*, No. C09-02112 JW (HRL), 2010 U.S. Dist. LEXIS 24193 (N.D. Cal. Mar, 16, 2010)
    (designated "not for citation"); *Bender v. Infineon Technologies North America Corp.*, No. C09-

21  02112 JW (HRL), 2010 U.S. Dist. LEXIS 24096 (N.D. Cal. Mar, 16, 2010) (designated "not for
    citation"); *Bender v. Micrel Inc.*, No. C 09-01144 SI, 2010 U.S. Dist. LEXIS 18134 (N.D. Cal.

22  Feb. 6, 2010); *Bender v. Advanced Micro Devices, Inc.*, No. C-09-1149 MMC, 2010 U.S. Dist.
    LEXIS 11539 (N.D. Cal. Feb. 1, 2010); *Bender v. International Business Machines Corp.*, Case

23  No. C 09-01249 RMW (RS), 2009 U.S. Dist. LEXIS 126510 (N.D. Cal. Nov. 13, 2010); *Bender
    v. Intersil Corp.*, No. C 09-01155 CW, 2009 U.S. Dist. LEXIS 126515 (N.D. Cal. Oct. 29, 2009)

24  [5] Lack of knowledge about how to comply with infringement contentions is the same
    defense Bender has made since his contentions were first found insufficient.  Specifically on

25  October 29, 2009, Bender told Judge Zimmerman through counsel in the *Bender v. Intersil* case:
    "You are absolutely right.  We believed then that our infringement contentions and our claim

26  char[ts] were adequate.  This is the first that we've been told by authority that it's -- that they're
    not.  We're happy to supplement . . . ."  (Ex. I, 10/29/09 *Bender v. Intersil*, Hearing Tr. at

27  30:8-12.  Now, after eight months and ten orders that his contentions in this and parallel cases are
    deficient, Bender's continued protestations that he didn't know his contentions were insufficient

28  ring hollow.

1    **III.**    **CONCLUSION**

2

3        For the foregoing reasons, Maxim respectfully requests that the Court grant Maxim's

motion to for sanction of dismissal.

4

5

6   Dated: July 16, 2010                   Respectfully submitted,

7                                    Jones Day

8

9                                    By:      /s/ *Greg L. Lippetz*

10                                       Greg L. Lippetz

11                                 Counsel for Defendant
                                     MAXIM INTEGRATED PRODUCTS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28