**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BENDER, | No. C 09-01152 SI |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR DISMISSAL SANCTIONS AND DIRECTING PLAINTIFF TO AMEND HIS INFRINGEMENT CONTENTIONS, AND CONTINUING CASE MANAGEMENT CONFERENCE** |
| v. | |
| MAXIM INTEGRATED PRODUCTS, INC., | |
| Defendant. | |

Defendant's motion for the sanction of dismissal is presently set for oral argument on July 30, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing.

Having considered the papers submitted, the Court concludes that dismissal is not warranted at this time and DENIES the motion for dismissal sanctions. However, the Court finds that plaintiff's Second Amended Infringement Contentions are deficient under the Patent Local Rules and directs plaintiff to serve a set of Third Amended Infringement Contentions no later than August 20, 2010.

**BACKGROUND**

Plaintiff Gregory Bender filed this patent infringement action on March 16, 2009, alleging that defendant Maxim Integrated Products, Inc. ("Maxim") is infringing U.S. Patent No. 5,103,188 ("the '188 Patent"). The '188 Patent is entitled "Buffered Transconductance Amplifier" and claims an electrical circuit for amplifying complex or high speed signals. FAC ¶ 6, 8; '188 Patent, FAC Ex. A. Plaintiff believes that Maxim is using his patented circuit component in its electronics products, including but not limited to cell phones, computer equipment, televisions, ultrasound machines, MRI

machines, lab equipment, audio and video amplifiers, hard disk drives, DSL modems, and satellite communication devices. *Id.* ¶ 8. This action is one of approximately twenty-five patent infringement suits filed by plaintiff in this district in 2009 against various defendants.

Plaintiff initially filed his Infringement Contentions ("ICs") in September 2009. Maxim moved to compel plaintiff to amend his ICs to comply with Patent Local Rule 3-1 and for relief from its discovery obligations pending service of amended ICs, but eventually withdrew the motion after the parties stipulated to the filing of Amended ICs. Once the Amended ICs were filed, Maxim moved to strike, or in the alternative to compel further amendment of the ICs. By order dated March 22, 2010 ("March 22 Order"), the Court denied the motion to strike but granted the request to compel plaintiff to further amend his ICs in compliance with Patent Local Rule 3-1. *See* March 22 Order (Docket No. 54). The Court found that plaintiff's ICs did not identify the location of each element of plaintiff's claims within each accused product, place each accused product within a representative category, or provide sufficient information in support of plaintiff's indirect infringement claims. *Id.* at *3-5. The Court stated that "[u]ntil plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery." *Id.* at *4.

On April 28, 2010, plaintiff served Maxim with his Second Amended ICs ("SICs"). *See* SICs, Schmid Decl. Ex. C. In the motion now before the Court, Maxim moves for the sanction of dismissal on the ground that the SICs fail to comply with Patent Local Rule 3-1 and the Court's March 22 Order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 ("Rule 37") provides that if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders [which] may include . . . dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A). "Severe sanctions such as . . . dismissal and default judgment are authorized only in extreme circumstances. To warrant imposition of these severe sanctions, the violations must be due to willfulness, bad faith or fault." *Refac Int'l, Inc. v. Hitachi, Ltd.*, 921 F.2d 1247, 1254 (Fed. Cir. 1990). The key factors to consider in assessing whether to dismiss an action are prejudice to the party seeking dismissal and availability of other forms of sanctions. Where less drastic sanctions are available and

2

sufficient to protect against prejudice, dismissal is typically not appropriate. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). District courts also possess inherent authority to issue sanctions for "abusive litigation practices," including dismissal of an action. *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985). As under Rule 37, dismissal under the Court's inherent power is limited to "extreme circumstances." *Id.*

**DISCUSSION**

As stated above, the Court's March 22 Order specifically directed plaintiff that his Contentions should be amended to: (1) specify the location of each claim element within the accused product, (2) provide an explanation of why the claim charts are representative of all the accused products, and (3) describe each element of his indirect infringement claims. The Court agrees with Maxim that plaintiff's Contentions are insufficient to address the concerns articulated by the Court in its March 22 Order and to meet the requirements of Patent Local Rule 3-1.

**I.    Location of Each Element**

First, the Court provided plaintiff with specific direction as to how to accomplish its instruction to specify the location of each claim element in the accused products. The Court stated that plaintiff may not (1) ask the Court "to assume that certain elements of the patent are present in the accused product," (2) "remedy the current inadequacy of the infringement contentions merely by circling portions of a commercially available datasheet," or (3) attempt to shift the burden of providing adequate infringement contentions to Maxim by "[s]imply stating that any electrical engineer would understand the infringement contentions." March 22 Order at *3-4. Plaintiff has not heeded the Court's instructions. Many of the claim charts still require the Court to assume the existence of certain elements in the accused products. For example, with respect to "first current rail" limitation of Claim 35, plaintiff states that the element is an "essential element[] of the 'Current Feedback Structure,'" that "[w]ithout current rails to provide power to the buffers, the buffers will not function," and that "[t]he current rails are not shown in the datasheet . . . because it is understood that a power source is required." SICs at C12. Plaintiff cannot simply rely on Maxim's publicly-available datasheets to diagram his claims, and

3

then attempt to escape his obligation to locate each element of each claim within the accused device by stating that he assumes an element of the claim must be present, although not depicted. As another example, for the "first and second pair of opposing current mirrors" element, plaintiff does not identify a specific location, but simply states that the mirrors are "obfuscated into the dotted line that connects the +1 triangle (buffer) and T2." *Id.* at C13. Plaintiff then asserts that "[w]ithout the current mirrors, the 'amplifier' would not behave as an amplifier." *Id.* These assumptions are insufficient to support plaintiff's obligation under Patent Local Rule 3-1 to provide Maxim with "fair notice as to where the alleged infringing [elements] are located" within the accused devices. *Bender v. Infineon Techs. N. Am. Corp.*, No. 09-2112 JW (HRL), 2010 WL 964197, at *2 (N.D. Cal. Mar. 16, 2010).

Additionally, despite the Court's specific admonition that plaintiff could not attempt to specify locations of the claim elements by merely circling portions of Maxim's datasheet, plaintiff has done exactly that in his SICs. *See, e.g.*, SICs at C5-C9. The fact that plaintiff has now circled more narrow portions of the data sheets does not excuse his actions. Finally, despite the Court's admonition that plaintiff could not escape his burden by stating that "any electrical engineer" would find his contentions sufficient, plaintiff has continued to assert in a conclusory fashion that "an analog electronics engineer ordinarily skilled in the art would understand the types of amplifier described below" and additionally that "[c]ollege textbooks indicating the numerous ways of creating a buffer or a current mirror in the art of analog electronics engineering also may be readily obtained." *Id.* at C3. Plaintiff may not shift the burden of identifying his claims to Maxim in this manner.

## II. Representative Claim Charts

Second, the Court instructed plaintiff that he had failed to explain how his claim charts were representative of all 200 accused products, as fewer than 50 products were actually listed on the charts. Although plaintiff has now apparently reduced the number of products he accuses of infringement, he still fails to explain how each accused products fits into the representative categories. Plaintiff's explanation regarding representative products is as follows:

> The following claim charts show representative samples of the types of amplifiers which infringe claims 35 and 8. Maxim builds such amplifiers into other products. Once infringement is shown on a single amplifier, all other products which incorporate this

4

> amplifier also must infringe by extension. . . .
>
> The use of the amplifiers in claims 35 and 8 of the '188 parent is pervasive throughout defendant's high-speed analog product lines. Plaintiff does not – and cannot – know the full extent of defendant's infringement. However, an application of claims 35 and 8 to individual amplifiers will show infringement. By extension, all other products that incorporate these very same amplifiers also infringe. Without discovery, Plaintiff cannot possibly know the full extent of Defendant's usage of this technology.

SICs at C3. While plaintiff may ultimately be correct that the accused amplifiers are used in multiple Maxim products, plaintiff must identify each accused product and link it to a representative product in order to provide Maxim with fair notice of the specific products which are accused in this lawsuit. *See Bender v. Freescale Semiconductor, Inc.*, No. 09-1156 PJH (MEJ), 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010) ("Rule 3-1(b) . . . requires Plaintiff to articulate how the accused products share the same, or substantially the same, infringing circuitry with any other product or with the 15 representative products. As such, the ability of Rule 3-1 to make discovery more manageable for both parties will be defeated by requiring Defendant to guess which versions of its products are allegedly infringing on the '188 Patent.") (quotation marks and citation omitted).

### III. Indirect Infringement

Finally, the Court ruled in the March 22 Order that plaintiff's ICs were insufficient to allege indirect infringement, in that plaintiff failed to identify how any third party was engaging in acts of direct infringement and how Maxim was allegedly contributing to that direct infringement. *See* Patent L.R. 3-1(d) (to allege indirect infringement, plaintiff must provide "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement"). The prior version of plaintiff's ICs stated:

> Plaintiff also and/or in the alternative presently contends that Defendant indirectly infringes at least the referenced claims by actively, intentionally, knowledgeably, knowingly, and willfully contributing to, encouraging, causing, and/or inducing third parties actually to infringe directly by providing its customers and others with specific and detailed explanations, instructions, and information as to arrangements, applications, and uses of its products that promote and demonstrate how to use its products in an infringing manner.

Amended ICs, Mot. to Strike Ex. B, at 3-4 (Docket No. 48-2). Post-amendment, the SICs now state:

> When Defendant Maxim sells what they call an "amplifier," they are selling a chip with a number of circuit structures built on it. . . . [T]he engineer who is using the amplifier

5

> must add feedback and load circuitry in order to set the properties of the amplifier to useful values required in their design. Defendant teaches, instructs, and explains in its datasheets how to add feedback as well as a load network. These acts – the addition of the supporting circuitry – are performed by every customer who uses an amplifier purchased from Maxim. Without this circuitry, the amplifier will not perform any meaningful function. The addition of this circuitry is the act performed by a 3rd party that causes direct infringement. This is the basis for induced infringement of claims 35 and 8. . . . Induced infringement occurs where defendant sells an amplifier with instructions how to add the remaining *essential* elements such as in the case of the MAX4180.

SICs at C4 (original emphasis).

Although plaintiff's SICs contain more detail than the previous version of the ICs, the Court agrees with Maxim that plaintiff has not sufficiently described the third-party acts that allegedly lead to indirect infringement. Plaintiff names "every customer who uses an amplifier purchased from Maxim" as a potential third-party infringer. However, plaintiff does not accuse all of Maxim's amplifiers in his SICs. Plaintiff also fails to explain with sufficient specificity the contributory acts allegedly committed by Maxim. Plaintiff states that Maxim "teaches, instructs, and explains in its datasheets" how to carry out acts of direct infringement, but does not identify the data sheets or the specific products to which he refers. In sum, plaintiff fails to provide adequate notice of the specific products as to which he alleges indirect infringement, much less to explain how such infringement occurs.

## V. Maxim's Request for Dismissal Sanctions

Despite concluding that plaintiff's SICs fail to correct many of the deficiencies identified in the Court's March 22 Order, the Court finds that plaintiff's failure to comply fully with the Court's order was not done willfully or in bad faith. To the contrary, as identified above, plaintiff's SICs show some amendments by which he was attempting in good faith to respond to the Court's directions. Accordingly, Maxim's motion for dismissal sanctions is DENIED. Maxim argues that dismissal of this action is the only means of preventing Maxim from being prejudiced by having to produce its propriety schematics. The Court will not require Maxim to produce its schematics at this time, however, because plaintiff's infringement contentions continue to be deficient. Rather, the Court will provide plaintiff with one more opportunity to attempt to amend his infringement contentions to bring them into

6

compliance with the Patent Local Rules.

It is apparent to the Court that plaintiff's difficulties in attempting to amend his infringement contentions arise from his unwillingness or inability to reverse engineer the accused products in order to determine how he believes they infringe the '188 Patent. Plaintiff is correct that there is no absolute requirement that a plaintiff engage in reverse engineering of an accused product prior to filing an infringement claim. *See Intamin, Ltd. v. Magentar Techs. Corp.*, 483 F.3d 1328 (Fed. Cir. 2007). Cases in which reverse engineering was not required, however, have tended to involve situations in which analyzing the accused product was either impracticable or unnecessary to create a basis for adequate ICs. *See, e.g.*, *id.* at 1338 (no reverse engineering required where the nature of the technology for the accused amusement park braking system "presented the patentee with unreasonable obstacles to any effort to obtain" a representative product); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004) (no chemical analysis of accused body lotion required where alleged infringement of each element of plaintiff's claims could be determined from the product label). Here, plaintiff has had two chances to amend his infringement contentions and has not yet succeeded in bringing them up to par. Reverse engineering may well be the only method by which plaintiff will be able to state his infringement contentions with sufficient specificity, including identifying the location of each infringing element and grouping similar accused products. *See Bender v. Freescale*, 2010 WL 1689465, at *4 ("While Plaintiff is correct that reverse engineering is not a per se requirement, courts do require an equivalent method that reveals on a claim by claim, element by element basis which products he alleges are infringing the '188 Patent.").

Plaintiff does not dispute that reverse engineering would enable him to discover further information about the allegedly infringing products. His primary contention, rather, is that he lacks sufficient funds to reverse engineer the products he wishes to accuse. *See* Bender Decl. ¶¶ 2-3. While the Court recognizes that reverse engineering may well pose a financial hardship to plaintiff, it appears that he cannot maintain this lawsuit without undertaking reverse engineering or some equivalent that will enable him to better articulate his claims.

Maxim's motion for dismissal sanctions is DENIED at this time, and plaintiff is directed to serve his Third Amended Infringement Contentions no later than August 20, 2010. In the event plaintiff's

7

amended contentions are still deficient, the Court will be prepared to reconsider Maxim's requests to strike the contentions and to dismiss this action.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for sanctions of dismissal. (Docket No. 57). **Plaintiff is ordered to serve his Third Amended Infringement Contentions by August 20, 2010.**

**The case management conference currently scheduled for July 30, 2010 is continued to September 10, 2010 at 3:00 p.m..**

**IT IS SO ORDERED.**

Dated: July 29, 2010

SUSAN ILLSTON
United States District Judge